(49 App. Div. 143.)

STEINSON v. BOARD OF EDUCATION OF CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. March 9, 1900.)

1. NEW YORK CITY SCHOOLS—EMPLOYMENT OF TEACHERS—POWER OF CITY SUPERINTENDENT.

Consol. Act (Laws 1882, c. 410) § 1040, provides for examination for a license to teach by the city superintendent and two inspectors of schools, and requires the license to be signed by the superintendent and the inspectors, who shall certify that they were present at the examination and concurred in the license. The by-laws of the board of education permit the city superintendent to issue a license for six months, but no permanent license can be issued until the candidate has had six months' experience as a teacher. *Held*, that such city superintendent cannot renew a provisional license at the expiration of six months, but must refuse a further license, or, on a proper examination, grant a permanent license.

2. SAME—EMPLOYMENT OF HOLDER OF STATE CERTIFICATE—VALIDITY.

Consol. Act (Laws 1882, c. 410) § 1040, requires a teacher in New York City schools to have a license to teach issued by the city superintendent and two supervisors of the board of education. Laws 1864, c. 555, § 15, makes a certificate from the state superintendent of public instruction conclusive evidence that the person to whom it is granted is qualified to teach in any schools of the state. *Held*, that such a state certificate authorizes the employment of the holder as a teacher in the New York City schools, though he has no license from the city superintendent, since Consol. Act, § 1022, makes the city schools subject to the general state laws.

3. SAME—APPEAL FROM DECISION OF CITY SUPERINTENDENT—CONCLUSIVENESS.

Consol. Act (Laws 1882, c. 410) § 1039, provides that appeals from the decision of city superintendents may be made to the state superintendent as provided by law. Code Pub. Inst. tit. 12, § 1, provides that any person aggrieved by any decision pertaining to the public schools may appeal to the superintendent of public instruction, whose decision shall be final. *Held*, that the state superintendent has jurisdiction of an appeal by a teacher holding a state certificate from the refusal of the superintendent of New York City schools to admit him as a teacher, and the determination of such appeal is conclusive.

4. SAME—TEACHERS—COMPENSATION.

A teacher who has offered to perform his contract without being permitted to do so, and who has been improperly removed, is entitled to recover his salary.

5. SAME—PUBLIC OFFICERS.

A teacher in the employment of the board of education of the city of New York does not hold a public office, requiring him to be reinstated to a position from which he has been removed to recover his compensation, since, if his employer refuses to permit him to work, he need only offer his services from time to time, and then sue for his salary.

6. SAME—JUDGMENT—RES JUDICATA.

A teacher suing for his salary is not precluded by an order denying him a mandamus to compel the board of education to put him on the pay roll, where the writ was denied because it was not the proper remedy.

Van Brunt, P. J., and Ingraham, J., dissenting.

Appeal from special term.

Action by George Steinson against the board of education of the city of New York. From a judgment at special term (58 N. Y. Supp. 734) dismissing his complaint, plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, McLAUGHLIN, and INGRAHAM, JJ.

Thompkins McIlvaine, for appellant.
Theodore Connoly, for respondent.

RUMSEY, J. The complaint alleges that in September, 1887, the plaintiff, then having a certificate of qualification to teach granted by the state superintendent of public instruction, was employed as a first assistant teacher in one of the common schools of the city of New York at the salary of $1,728 a year, payable monthly; that he had never been removed; that the defendant had refused to pay his salary since the 12th of March, 1890, although he had demanded payment; that his claim for his salary had been duly presented to the comptroller of the city of New York; and that he had brought this action to recover his salary from the 12th of March, 1890, up to the time of the commencement of the action. The defense substantially was that on the 9th of October, 1886, the plaintiff received a provisional license to teach for six months from the city superintendent of schools; that in September, 1887, he had been appointed a teacher, as alleged in the complaint, but that such appointment was not for any fixed time, but remained and continued in force, by renewals of said provisional license for periods of six months each, until the 12th day of March, 1890, when the provisional license expired; that it was not then renewed and extended, and that thereupon the employment of the plaintiff under such appointment terminated; that the action of the city superintendent of schools in refusing to renew his license was a final determination of the matter, and is a bar to this action; and that, further, his rights had been adjudicated in a proceeding brought by the plaintiff as relator to compel the board of education of the city of New York to pay his salary, in which proceeding his demand was denied.

The defendant claims that, as a condition precedent to a valid employment in the schools of the city, plaintiff must have had a license from the city superintendent. The statute provides that an examination for such a license must be conducted by the city superintendent, or such one of his assistants as he may designate, in the presence of at least two inspectors of public schools, who shall be designated for the purpose by the by-laws of the board of education; and it further provides that the license granted after such examination must be signed by the city superintendent and by at least two inspectors designated for that purpose, who shall certify that they were present at the examination and concur in granting the license. The by-laws permit the city superintendent to issue two kinds of licenses,—one called a "provisional license," good for six months, and another called a "permanent license"; and they provide that no permanent license shall be issued until the candidate

63 N.Y.S.—9

shall have had six months' experience as a teacher in one of the common schools of the city. The power given to the city superintendent, therefore, is strictly prescribed by these by-laws, as they are limited by section 1040 of the consolidation act. He may issue a provisional license, good for six months, which must be signed also by the two inspectors. He can issue a permanent license, to be signed in the same way. No power is given to him to renew a provisional license from time to time, or to issue any license whatever, except one signed by two inspectors, and after an examination as prescribed by section 1040 of the consolidation act. There is no pretense that, when the plaintiff was hired by the ward trustee, he had any such license. He had a provisional license, dated in October, 1886, and that had expired; and, though the city superintendent had assumed to renew it, his renewal was invalid for two reasons: In the first place, the statute gave him no authority to renew a provisional license; and, in the second place, every license, to be valid, must be signed by two inspectors, as well as by himself, and it is testified explicitly in this case that they had not only not signed it, but knew nothing about it. Not only is no power given to the city superintendent to renew these provisional licenses from time to time, but there is every reason why this power should not be lodged in him. The power of removal of a teacher is expressly vested in the ward trustees or the board of education, and the city superintendent has no power whatever in the premises except to make recommendations to the board of education. Consol. Act, §§ 1038–1042. If a license from the city superintendent were a necessary qualification to teach, and the city superintendent was vested with the power of granting provisional licenses from time to time, and renewing them if he saw fit, the result would be that the teachers would hold their positions purely at the will of the city superintendent, who might oust them by refusing to appoint them after any term of six months had expired. No such power is vested in him. He may undoubtedly grant a provisional license for six months, but at the end of that time he is bound to refuse a further license, or, upon proper examination, to grant a permanent license.

But, although the plaintiff had no city license at the time the city employment began, yet his employment was, in our judgment, valid. He did have a certificate from the state superintendent of public instruction, which by the statute is "conclusive evidence that the person to whom it was granted is qualified by moral character, learning and ability to teach in any school of the state." Laws 1864, c. 555, tit. 1, § 15. That certificate was sufficient to authorize the board of ward trustees to employ him as a teacher, if they saw fit to do so. The schools of the city are subject to the general statutes of the state (Consol. Act, § 1022); and, in the absence of some statutory authority, the city officials have no power to limit the effect of the certificate granted by the state superintendent. When one bearing that certificate presents himself to the board of ward trustees, they alone have the power to employ him (section 1035, subd. 2); and they are at liberty to employ him, if they see fit. It is not intended to say that they are compelled to employ him because he

has such a certificate. They may, of course, apply such tests as they wish, and examine him as they see fit; but, if he has such a certificate, the ward trustees have the right to hire him without his securing any other certificate, and such a hiring is good and binding, being within their power to make. The power given to the board of education to issue licenses does not authorize it, in our judgment, to limit the effect given by the statute to the certificate of the state superintendent. The power has the full effect which ought to be given to it, if it is construed to authorize them to grant licenses to persons who have no certificate from the state superintendent of public instruction, in analogy to the like power given to the school commissioners of the several counties of the state. Laws 1864, c. 555, tit. 2, § 13, subd. 5. It is well known that certificates are granted by the state superintendent only after the strictest examination, and there is every reason why such a certificate should afford the holder of it ample evidence that he is qualified to teach in the common schools, as the law prescribes that it shall.

The fact, therefore, that the so-called "provisional license" expired in March, 1890, had no effect whatever on the status of the plaintiff as a teacher, or upon his contract with the ward trustees. Not only is this so in principle, but it has been so adjudicated by the state superintendent of public instruction. It appears that when the plaintiff presented himself to teach after the 12th of March, 1890, the principal of the school where he was employed refused to admit him in compliance with the direction of the city superintendent, and from that action he took an appeal to the state superintendent of public instruction, which is set forth at length in the case. That was done in accordance with the express provisions of section 1039 of the consolidation act, which provides that appeals from the acts and decisions of the city superintendent may be made to the state superintendent in the same manner and with the like effect as in cases now provided by law. By the Code of Public Instruction (title 12, § 1) it is provided that:

"Any person considering himself aggrieved in consequence of any decision made by any official act or decision concerning any other matter under this act, or any act pertaining to public schools, may appeal to the superintendent of public instruction, who is hereby authorized and required to examine and decide the same; and his decision shall be final and conclusive, and not subject to question or review in any place or court whatever."

Whenever any act has been done as a result of which it is claimed that a teacher has been dismissed from his employment, an appeal lies to the state superintendent. People v. Eckler, 19 Hun, 609. The state superintendent, therefore, had jurisdiction of this appeal, and his determination is final and conclusive. That determination was set forth in the record, and it is to the effect that, although the provisional license was stated to have expired on the 12th of March, 1890, the relator was qualified, by reason of his holding a certificate from the state superintendent, to teach in the common schools, and that he could not be removed by the act of the city superintendent in refusing to renew his provisional license. So far as the city superintendent was concerned, whatever was done had

no effect on the status of the plaintiff when he had been employed by the ward trustees. It appears affirmatively that the plaintiff was not removed in any other way. The ward trustees, by a resolution passed on the 13th of January, 1890, undertook to transfer him from his position of permanent assistant to that of additional teacher, at the same salary which he had before. From that resolution the plaintiff, as he was permitted to do by section 1038 of the consolidation act, appealed to the board of education, and the appeal was sustained by a resolution of the board on the 15th of March, 1890. After that resolution had been passed, the plaintiff remained in his position of permanent assistant at the same salary. It is conceded that he made efforts to perform his part of the contract to teach, but was not permitted to do so; and, when that was made to appear, coupled with the fact that he had not been properly removed, he became entitled to recover his wages. Gillis v. Space, 63 Barb. 177.

But it is said that he occupied a public office, and that, as there was no attempt to remove him which was so far successful that he could not perform the duties which he was hired to perform, he is therefore not entitled to recover until he has been reinstated. The answer to that is quite plain. The plaintiff did not hold a public office. He was a mere employé of the ward trustees, selected by them and removable by them, if for any reason they saw fit to remove him and the board of education concurred. It is hardly necessary to examine into the correctness of this statement, for it has already been adjudicated that a teacher in the employ of a board of education does not hold a public office, but is simply an employé of the board. People v. Board of Education, 3 Hun, 177–179. A school teacher in the common schools of this city occupies no different position than does a teacher in the common schools of the state. The only distinction is that such teachers are hired for a specified time, and, if the contract is not renewed, the employment ceases. In this city it does not seem that they are hired for a fixed time, but they can be removed at any time by the action of the proper authorities, which action is a pure exercise of the discretion vested in them in this regard by the statute. 3 Hun, 177. It would be a strange doctrine, indeed, if it were to be held that every person employed to teach was an incumbent of a public office. He receives no commission. He has no certificate of appointment. He takes no oath of office. He has no public duty to perform, and his position does not in any way resemble the position of one upon whom a public office has been conferred. He is hired. He has precisely the same rights as any one has under his contract of employment; and that is, as stated in the case of Gillis v. Space, supra, if his employer refuses to permit him to work, he need only offer his services from time to time, and then sue for his salary. This imposed no hardship upon the city, because, if it was not thought best to continue his employment, he could have been removed at any time by the ward trustees of the board of education (Consol. Act, §§ 1038, 1042); and their action in that behalf is not subject to review (People v. Board of Education, 3 Hun, 177).

The defendant sets up as a defense the final order of this court denying plaintiff's motion for a peremptory writ of mandamus to the board of education to put him on the pay roll. That an application of that nature was made and denied is conceded, but that denial had no effect whatever as to the right of the plaintiff to recover his salary. It simply held that a writ of mandamus was not the proper remedy, and it was so stated in the opinion of the court. People v. Board of Education, 60 Hun, 486, 15 N. Y. Supp. 308. The court held his claim was nothing more than a mere common-law demand, and that "it was quite a novelty to seek to collect a debt by the writ applied for," and for that reason alone his application was denied. New proceedings were subsequently begun, and the court denied them simply on the ground of laches, as appears by the report of the case in 20 App. Div. 452, 46 N. Y. Supp. 782. Nothing that was said by the court of appeals, affirming these determinations of this court, tends in any way to show that the denial of the writ of mandamus had any effect upon the right of the plaintiff to maintain this action.

The answer contains a plea of the statute of limitations as to so much of the claim as accrued before the 6th of July, 1896, which seems to have been the time of the commencement of this action. What may be the effect of that defense, and to what extent, if at all, it is available to the defendant, was not considered by the court below, and no facts are presented to enable us to consider it. In reversing this judgment, as we must, we do not pass upon the plea of the statute of limitations, or suggest what effect that may have.

Judgment reversed, with costs to the appellant to abide the event of the new trial hereby granted. All concur, except VAN BRUNT, P. J., and INGRAHAM, J., who dissent.

BARRETT, J. (concurring). So much has been written in this case that I will content myself with briefly stating the conclusions at which I have arrived:

1. The plaintiff was not a public officer, but a mere employé of the trustees. To the authority for this view of the plaintiff's position cited by Justice RUMSEY I add Swartwood v. Walbridge, 57 Hun, 33, 10 N. Y. Supp. 862. This case is directly in point, and holds that the remedy of the discharged teacher is "to tender a continuance of his services, and to bring an action for the recovery of his compensation as if such services had been actually rendered." The cases cited by Justice INGRAHAM are entirely inapplicable, relating, as they do, to persons who have been removed from office or public position, and who consequently must be reinstated before an action for salary will lie. In the present case the plaintiff was neither removed nor discharged. His employment continued without break. He was thus, while retained, simply prevented by an agent of the defendant from performing his duties. His case is clearly distinguishable from those where a discharged employé sought to recover compensation from the municipality for the period during which, owing to an unlawful discharge, no services were rendered by him.

2. When the plaintiff was employed by the trustees, he was in the possession of both a state and a city license to teach. The possession of the former is conceded; that of the latter denied. The so-called "provisional license" which he originally received from the city was simply a license to teach. The six-months qualification was unauthorized. The statute gave the board power to prescribe the form of the license, but not its substance. There was no express authority to grant two classes of licenses,—one provisional, and one permanent. Nor can such authority be implied, for the reason that the entire context in subdivision 2, § 1040, of the consolidation act is at variance with any such implication. Provision is there made for the revocation of the authorized license in a specified manner, as well as for the re-examination of the licensed teacher under specified conditions, and for an appeal to the state superintendent against any such revocation. All these provisions are idle, and the appeal is rendered nugatory, if the same result can, in effect, be attained by originally granting but a temporary license. To that extent, the by-law of the board is in conflict with the statute. And these provisions are a complete answer to the argument ab inconvenienti, and in favor of a trial of the teacher before granting him a permanent license. When we find, also, that temporary periods are expressly provided for in the case of state licenses (Laws 1864, c. 555, tit. 1, § 15), we cannot overlook the conspicuous absence of any such provision in the local statute. When the license here was granted to the plaintiff, it was necessarily predicated upon the certificate of qualification which it contained. It was the statutory expression of that qualification. Upon his examination with that result, he became entitled to teach "in any of the schools under the charge of the board." Subdivision 2, supra. The board could not vary or qualify the legal effect of what had been thus found. A simple and efficient remedy was provided in case it were subsequently ascertained, whether in one day or six months, that the licensed teacher was incompetent. My judgment, therefore, is that the plaintiff, having been found upon examination to be duly qualified as a teacher, was entitled to, and in legal intendment received, a license to teach in the schools of the city, and that the addition of the words "for the term of six months from the date of this certificate" must be rejected as surplusage, and as forming no part of the license.

3. This view renders it unnecessary to express a decided opinion upon the question as to which my Brethren have differed, namely, as to whether the minute provisions of the local act are confined to persons who have not secured a state license.

For the reasons stated, the judgment should be reversed, and a new trial ordered.

McLAUGHLIN, J., concurs in result.

INGRAHAM, J. (dissenting). The action is brought to recover the yearly salary or rate of compensation of $1,728, payable monthly, which the plaintiff claims he is entitled to as a first assistant teacher in the common schools in the city of New York from the 12th day

of March, 1890, to the date of the commencement of the action. It appeared on the trial that on July 16, 1883, the superintendent of public instruction duly issued a license to the plaintiff "to teach in any public school within this state," and on October 9, 1886, the city superintendent of schools of the city of New York issued a certificate that the plaintiff had been duly examined and found qualified in respect to learning and moral character to teach in the common schools of the city of New York as an assistant teacher of the first grade in grammar school, "and is hereby licensed as such for the term of six months from the date of this certificate," which certificate was duly concurred in by two of the inspectors of common schools of the city of New York. Subsequently, and on the ———— day of September, 1887, the plaintiff applied to the ward trustees of the common schools of the First ward for employment, and presented to them the city license and the state license, and was appointed a first assistant teacher in Grammar School No. 29. It further appeared that the plaintiff continued in the employ of the city up to March 12, 1890, when he received a notice, dated March 10, 1890, from the state superintendent of schools, as follows:

"Sir: You are hereby notified that the period for which you are licensed as a teacher will expire on Wednesday next, the 12th inst."

The plaintiff was paid for his services at the rate fixed by his appointment up to March 12, 1890. On March 14, 1890, he went to his class room, and offered to teach the class, but was actually and physically prevented from entering his class room; and since that time he has repeatedly tendered his services to the board of education, and has ever since been ready to perform his duties.

On behalf of the defendant, the city superintendent testified that he had from time to time renewed this temporary license which he had granted to the plaintiff, until March 12, 1890, when he refused to grant a further license, and that therefore the plaintiff ceased to be a teacher in the public schools. There is no dispute that the plaintiff was dropped from the pay roll on March 12, 1890, the date at which his last license expired, and that since that time he has been treated by the school officers as not being in the public service, and has performed no services as a teacher.

After his removal, the plaintiff presented a petition to the superintendent of public instruction, by which he appealed from the action of the city superintendent of schools, and asked the superintendent of public instruction to restrain the superintendent of schools, the principal of Grammar School No. 29, and all other persons from interfering with him in the discharge of his duties as first assistant teacher, and to direct said superintendent of schools to award to the plaintiff a permanent license, and to direct the board of education of the city of New York to pay him his salary. The city superintendent of schools presented an answer to the appeal of the plaintiff, setting forth certain by-laws of the board of education of the city of New York. The said superintendent of public instruction held that the license received from the state superintendent of public instruction authorized the plaintiff to teach in any school in the city of New York, regardless of the certificate issued to him by the city authorities, and

that, once having been appointed, he could only be removed—First, by the revocation of his certificate as a teacher; and, second, by the action of the board of education. He therefore held that the plaintiff was unlawfully deprived of his position as a teacher in Grammar School No. 29, and that he now stands entitled to exercise the functions and receive the emoluments of such position.

The plaintiff subsequently commenced a proceeding by mandamus to compel the board of education to pay him his salary, which was refused upon the ground that his remedy, if any, was by action; and that refusal was affirmed by the court of appeals. 60 Hun, 486, 15 N. Y. Supp. 308; 148 N. Y. 766, 43 N. E. 989. Subsequently he made an application to the supreme court for a peremptory writ of mandamus requiring the board of education to reinstate him as a teacher in the public schools of the city of New York. That motion was denied by the special term, and upon an appeal to this court it was affirmed, upon the ground that the relator was guilty of laches in permitting so long a period to elapse before making the application. In denying that application, Mr. Justice Parker, in delivering the opinion of the court, said:

"On the 13th day of January, 1891, the court at special term denied his [plaintiff's] motion for a peremptory writ of mandamus to compel the payment of his salary as a teacher; and by the decision he was advised that he was mistaken in his remedy. Nevertheless, he appealed to the general term, which court, in June, 1891, affirmed the order of the special term, and in the opinion of the court, delivered by Mr. Justice Patterson, it was pointed out that the proceeding was one to compel the payment to him of the sum alleged to be due as salary, and not for reinstatement in his place as teacher. But, instead of heeding the suggestion of the court and instituting the proper proceeding, the relator elected to wait until a decision of the court of appeals should be had; and he prosecuted the appeal with so little diligence that not until nearly four years thereafter was the case submitted to that court, the result of which was an affirmance upon the opinion of the general term."

Upon an appeal to the court of appeals this decision was affirmed. Judge Gray, writing the opinion of the court, said:

"Upon these facts, showing a delay of about six years in instituting the present proceeding, the relator was chargeable with a laches which was not shown to be excusable. He had been advised in the prior proceeding as to his mistake in the remedy selected. It was incumbent upon him, if he desired to avail himself of the present remedy, to proceed without unreasonable delay; and, not having done so, but having persisted in prosecuting the other remedy by way of two appeals, it was quite competent for the court below, in the exercise of its discretion, to deny the application for this writ because of the delay of the relator in applying for it. The right to a mandamus was not at all clear; but, even assuming that a case was made out in which a peremptory writ might have been issued, the court had a discretionary power to refuse it." 158 N. Y. 126, 52 N. E. 722.

The plaintiff's right to maintain the proceeding, had it been commenced in time, was not questioned in either court. It thus appeared that the plaintiff had been removed from his position as teacher in the public schools of the city of New York, upon the ground that his right to hold such a position was dependent upon his obtaining a license from the city superintendent, and that, as the period for which he had been licensed had expired, he was not competent to hold a position as teacher in the public schools. He instituted a proceeding

to recover his salary as such teacher, which application was denied, and he then instituted a proceeding to reinstate himself in the position from which he claims he was illegally removed. He was then out of office, had made an application to be reinstated upon the ground that he had been illegally removed, and that application had been denied. It is not necessary to inquire as to the legality of that removal. The fact that the plaintiff was removed as a teacher upon the ground that his license to teach, granted under the provisions of the consolidation act, applying to the city of New York, had expired, and his failing to hold such a license, made him incompetent to occupy the position; and the fact that he had not been reinstated in such position, upon well-settled rules, prevents him from maintaining an action against the public authorities for his salary or compensation.

In Wood v. Mayor, etc., 55 N. Y. Super. Ct. 230, the plaintiff had been a foreman in the fire department, and was charged with some violation of duty, was found guilty, and was retired from the service on an annuity of $150 a year. He subsequently applied to be assigned to duty in his former position in the department, which application was refused, and then he sued for his salary during his retirement. In sustaining a judgment for the defendant the court said:

"The claim is founded upon the assumption that for the time for which he asks he was an officer, and therefore entitled by law to the salary attached to the office. I am of opinion that he was not an officer in fact. Rightly or wrongly, he had been removed from office. To entitle him to the salary, it was necessary that in fact, by legal proceedings or otherwise, he should have been reinstated."

And this judgment was affirmed by the court of appeals without opinion. 124 N. Y. 627, 26 N. E. 758.

In McManus v. City of Brooklyn (City Ct. Brook.) 5 N. Y. Supp. 424, affirmed in Hagan v. Same, 126 N. Y. 643, 27 N. E. 265, the same question was presented. There Chief Justice Clement, in affirming the judgment against the plaintiff, said:

"The difficulty in this case is that an officer who is improperly removed from his office seeks reinstatement, not directly, but in an action to recover his salary, which is simply an incident to his office. * * * It is no answer to the proposition to say that the order was a nullity, for the reason that the commissioners acted without jurisdiction, because one object of a common-law certiorari is to review the jurisdiction of inferior officers. The plaintiff was put out of his office, and has never been reinstated, and cannot maintain, in our opinion, an action for his salary while he is out of office."

In People v. Board of Police, 75 N. Y. 38, the same principle is recognized.

In McVeany v. Mayor, etc., 80 N. Y. 193, the court, after a review of the cases, said:

"It is then to be deduced from the cases in this state that as a general principle the rendition of official service must precede a right to demand and recover the compensation given by law to the officer; that the disbursing officer of a municipality is protected from a second payment of that compensation, and so is his superior, when he has once made payment to one actually in the office, discharging the duties of it with color of title, with his right thereto not determined against him by a competent tribunal; that when there has been such an adjudication, any amount of compensation for services rendered, not

paid to him, is due and payable to the one adjudged to be the officer de jure, and may be recovered by the latter of the municipality."

In Nichols v. MacLean, 101 N. Y. 530, 5 N. E. 347, the distinction between a case where an officer de jure has or has not been reinstated is pointed out, and the right of the officer de jure to maintain an action against the municipality, or against the intruder in office, seems to me to have been clearly limited to a case where, by a proper action or proceeding, the officer de jure had been reinstated in or awarded the office for which he seeks to recover his salary or compensation. It is not stated in this record that any other official had been appointed to fill the place from which the plaintiff was removed; but, in the absence of a judgment reinstating the plaintiff, this does not seem to be material. 'If the plaintiff had succeeded in his proceeding to compel his reinstatement, he would then have been entitled to recover his salary for the period of his expulsion, except for such period as the defendant had in good faith paid to the person appointed to his position prior to the time of his reinstatement. Dolan v. Mayor, etc., 68 N. Y. 274. But still I think that where an officer has been removed by the appointing power, or a person having authority to remove him upon complying with the statutory conditions, a reversal of the removal or the reinstatement of the officer to the position from which he had been removed is a condition precedent to the recovery of his salary or compensation after he is removed.

There was a contest between the plaintiff and defendant which was instituted by the removal. The plaintiff was not appointed for any fixed time. He was appointed to an office or position, which he was entitled to fill until he was legally removed. When removed illegally, he was entitled to be reinstated by mandamus (People v. Kearney [Sup.; Nov. 24, 1899] 61 N. Y. Supp. 41); but, until he was so reinstated, applying the general principle that "the rendition of official service must precede a right to demand a recovery of the compensation given by law to the officer" (McVeany v. Mayor, etc., supra), he could not maintain an action for such salary.

I think, for the reasons stated, that the judgment was right, and should be affirmed, with costs.

VAN BRUNT, P. J. I concur in the opinion of Mr. Justice INGRAHAM. I think, however, that there are other objections which are fatal to the plaintiff's right of recovery. The claims that are made that under Laws 1864, c. 555, tit. 12, § 1, an appeal from any official act or decision of the board of education of this city may be taken to the superintendent of public instruction, whose decision upon the same shall be final and conclusive, and not subject to question or review in any place or court whatever, and that the only qualification necessary to make a person eligible to an appointment to the position of teacher in the public schools of the city of New York is the possession of a certificate of the state superintendent, would seem to put the full control of the public schools and the public school system of the city of New York in the hands of the state superintendent, which is distinctly in hostility to the evident purposes of the act relating to the public schools and the public school

system, as shown by section 1022 of chapter 410 of the Laws of 1882, and the subsequent sections relating to the public schools and the public school system of the city of New York. Section 1022 says that there shall be in the city of New York a board of education, which shall under that designation have full control of the public schools and the public school system of the city, subject only to the general statutes of the state upon education. Here is the evidently expressed intention, in harmony with which are the other provisions of the act in question relating to the public schools and their management, that the board of education shall have full control of the public schools and the public school system of the city. If every official act of the board of education is to be subject to the arbitrary refusal of the state superintendent, then clearly the board of education has not the control which the statute evidently intended to confer upon it.

It seems to me, also, equally clear that the claim that the only qualification necessary to make a person eligible to the appointment of teacher in the public schools of the city is the possession of a certificate from the state superintendent is entirely at variance with the legislation governing the management of the public schools of the city. By subdivision 7 of section 1027 of the Laws of 1882 above quoted, express authority is given to the board of education to make by-laws; and by subdivision 2 of section 1040 the necessity for an examination into the qualification of persons proposed as teachers in any of the schools under the charge of the board, and the duty of making general rules and regulations governing such examinations, is expressly recognized. In this subdivision it is made the duty of the superintendent, under such general rules and regulations as the board of education may establish, to examine into the qualification of persons proposed as teachers in any of the schools "under the charge of the board." Then follow directions as to the persons who shall conduct the examination; and it is expressly recognized that this subject shall be regulated by the by-laws of the board of education, because it uses the language "who shall be designated for the purpose by the by-laws of the board of education,"—clearly showing that the rules and regulations under which these examinations are to be conducted are to be established by the by-laws of the board, and such by-laws are to govern the conduct of the examination.

The subdivision in question further provides that licenses shall be granted to those persons found upon such examination to be entitled thereto, "which shall be in the form prescribed by said by-laws," and then provides by whom they shall be signed. These licenses must have been supposed to be of some value to the holder, as the legislature has protected them with the greatest care. In the same subdivision it is provided that they shall never be revoked, except for some cause affecting the morality or competency of the teacher, and has placed, even then, the licenses beyond the reach of the city authorities by providing for an appeal to the state superintendent in case of an attempted revocation. If it had been intended that the only qualification which the applicant for the position of teacher in the public schools need possess was a certificate from the state superintendent, why all this minute and careful provision

for examination as to qualification by the city authorities, and the sedulous protection to the teacher of the fruits of that examination? It seems to me that it was clearly intended that the local authorities should pass upon the qualification of the teachers in the public schools of the city, and that the board of education in its by-laws should regulate all these questions, having full control of the public schools and of the public school system of the city.

In pursuance of the authority thus conferred upon the board of education, it has provided in its by-laws for two forms of licenses, —one a provisional license, and one a permanent license; and it has also provided that "no person shall be permitted to perform services in any position as a teacher not licensed as above." This by-law was in general harmony with the express powers conferred upon the board of education to which attention has been called, by which in their by-laws they were to regulate the questions of appointment, qualification, and duties of the teachers employed in the public schools under their charge. These by-laws, when adopted, had the force of a statute, and they could not be disregarded, even by the board of education itself, without their being repealed or altered in the manner provided for in such by-laws. The board of education had the right to say who should be employed in the public schools as teachers. They had a right to regulate such employment. They had a right to determine what should be the qualifications of the person so employed. And they had a right to regulate the method of ascertaining these qualifications, and the duty was imposed upon them of issuing to these persons, found upon examination to be entitled thereto, licenses to teach in such schools, in the forms prescribed by their by-laws.

Such being the duties and powers of the board of education, the plaintiff in this action presented himself for examination, and there was issued to him a provisional license to teach, given for six months. It was upon the faith of that license that he was employed. The six months expired, and the city superintendent, probably without authority, extended this license from time to time, and the plaintiff continued to act as a teacher in the public schools. Finally, the license was no further extended, and the plaintiff was not permitted any longer to occupy the position of teacher. It is now claimed, because he held a state license, and had been appointed teacher, that, in violation of the by-laws of the board of education, which they had a right to adopt, he could hold on to the position to which he had been appointed, which was probationary in its character, and during which, we must assume, he was found wanting, because no permanent license was ever issued to him. The majority of the court seem to uphold the position that the board of education has no right by its by-laws to fix the requirements which are necessary to the employment of teachers in the public schools.

The plaintiff took an appeal from the determination as to the right to employment to the state superintendent, who decided that he was entitled to employment; and it is claimed that this determination of the state superintendent upon the appeal to him by the plaintiff is conclusive upon the question of his right to employment.

It seems to me that this claim rests upon the proposition that the provisions of the general statutes override the provisions of the law applicable only to the public school system of the city of New York. As I understand the rule, it is that the local statute prevails, even when the general statute is passed after the local one, unless the two statutes are inconsistent, and cannot both stand; and clearly, when the local statute is passed after the general one, it is the law governing the locality to which it applies. The statutes relating to the public schools in the city of New York provide a complete and harmonious system for the government and management of the schools of said city, and are not applicable to any other locality. In these statutes there is a special provision for an appeal to the state superintendent in the case of a revocation of a license granted under the acts relating to the city schools, and no other provision for an appeal is made. This seems to me to clearly indicate that such appeals were intended to be confined to the instances there named. If it had been intended that a general right to appeal under the general statutes should exist, this provision for an appeal in the special case was useless. We must necessarily conclude that such an appeal could not be taken under the general law; hence the giving the right to appeal in the special instance.

An examination of the general law seems to me to show that it is inapplicable to the school system of this city. It is true that the act relating to the public schools in the city of New York and their management provides that the board of education shall have full control of the public schools in the city of New York, subject, only, to the general statutes of the state upon education; but where it is apparent that there is a conflict between the statutes, or where the provision of the general statute cannot apply without doing violence to its evident meaning, the local statute, providing, as it does, a complete system for the government of the schools, must control. The general law (Laws 1864, c. 555, tit. 12, § 1) provides as follows:

"Any person conceiving himself aggrieved in consequence of any decision made: (1) By any school district meeting. (2) By any officer regarding the forming or altering school districts and apportioning moneys. (3) By supervisors. (4) By trustees of school districts. (5) By trustees of school libraries. (6) By district meetings. (7) By any other official act or decision concerning any other matter under this act, or any other act pertaining to common schools,—may appeal to the [state] superintendent of public instruction, who is hereby authorized and required to examine and decide the same; and his decision shall be final and conclusive and not subject to question or review in any place or court whatever."

The first six subdivisions of the act clearly cannot apply to the schools in this city. But it is claimed that, under the general words contained in the seventh subdivision, the provisions of that section apply to the schools of this city. This subdivision, so far as material here, reads as follows:

"By any other official act or decision concerning any other matter under this act, or any other act pertaining to common schools," etc.

This provision clearly applies only to common schools generally, and not to schools which have provided for them a system of their

own; and its operation is not extended to the schools of this city by the words contained in the act relating to the public schools in this city, "subject only to the general statutes upon education." It says that the board of education shall have full control of the public schools and the public school system of the city, and then follow the words quoted. The statute relating to the schools of this city gives rights of appeal, applicable only to the system thereby regulated, and provides for an appeal in a single instance to the state superintendent. This local statute thus having provided for the cases in which an appeal might be taken, the general act cannot be held to apply, as the words "subject only to the general statutes of the state upon education" were only intended to have effect in respect to points not provided for in the local act.

I am of the opinion, therefore, that the state superintendent was absolutely without jurisdiction in the matter of the appeal. If the general right of appeal to the state superintendent exists, and his decisions shall be final and conclusive, and not subject to question or review in any place or court whatever, then, as already has been stated, instead of the board of education being vested with the "full control of the public schools and the public school system of the city," such control is actually vested in the state superintendent, which was clearly not the intention of the act relating to the public schools in the city of New York.