BOGERT v. BOARD OF EDUCATION OF CITY OF NEW YORK.

(Supreme Court, Appellate Division, Second Department. June 9, 1905.)

1. MUNICIPAL CORPORATIONS—SCHOOLS—TEACHER EMPLOYED AT TIME OF CONSOLIDATION—PERSON HOLDING OFFICE FOR DEFINITE TERM.

Plaintiff was employed under a yearly contract as a teacher in a town which became a part of the city of Brooklyn during the year covered by the contract. Thereafter he continued to serve as teacher, without any contract or agreement as to term of service. While so serving, the city of Brooklyn was on January 1, 1898, made part of the city of New York, by Laws 1897, p. 380, c. 378. In June, 1897, a committee of the Brooklyn school board recommended the assignment of plaintiff to certain duties for a term commencing in September, 1897, and ending June 30, 1898. This committee subsequently reported under the heading. "Appointments for Specified Time," and the school board later granted the plaintiff a certificate entitling him to occupy the position to which he had been recommended. It did not appear that plaintiff had any knowledge of this action of the committee and board. *Held*, that on January 1, 1898, when Brooklyn became part of the city of New York, plaintiff was not a person holding office for a definite term, within New York City Charter, § 1117 (page 404), providing that after consolidation all teachers should continue to hold their positions, but that all persons transferred to the service of the consolidated city who should hold office for definite terms should be transferred for the remainder of their terms only.

2. SAME—REAPPOINTMENT.

A teacher was employed for an indefinite term by the city of Brooklyn at the time it became a part of New York. After consolidation the school board of the city of Brooklyn appointed the teacher to a certain grade for a definite period of one year. New York City Charter (Laws 1897, p. 404, c. 378) § 1117, provided that all teachers serving in the public school system of any part of the city of New York at the time of consolidation should continue to hold their positions. Section 1114 authorized the removal of teachers by trial upon charges properly preferred. *Held*, that the teacher's status was not affected by the appointment for one year made after consolidation, but that, as he was employed as a teacher at the time of consolidation, he could, under the section cited, be removed only in the manner provided by section 1114 (page 403).

Appeal from Trial Term, Kings County.

Action by Frank M. Bogert against the board of education of the city of New York. From a judgment for plaintiff (89 N. Y. Supp. 737), and from an order denying a motion for a new trial, defendant appeals. Affirmed.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, RICH, and MILLER, JJ.

William Hughes (James D. Bell, on the brief), for appellant.
Lavinia Lally, for respondent.

RICH, J.  The action was brought to recover salary alleged by
plaintiff to be due and owing him for services rendered as a teach-
er in the public schools of Greater New York from July 1, 1898,
to December 26, 1901, when this action was commenced; and this
appeal is from a judgment entered therein by direction of the court,
and from the order denying defendant's motion for a new trial.
On January 20, 1872, the plaintiff received a state normal school
certificate, which was indorsed by the Superintendent of Public
Instruction, which was never revoked or annulled.  This certifi-
cate is made by law conclusive evidence of his qualification and
ability to teach any common school in the state, and vested in him
the right to teach, upon being properly employed.  In 1890 he
served as a teacher and principal of a common school in the town
of New Utrecht, Kings county, under an employment for one year,
evidenced by the written memorandum required by law, which em-
ployment was continued from year to year.  July 1, 1894, the town
of New Utrecht became part of the city of Brooklyn, under the
provisions of chapter 451, p. 931, of the Laws of 1894, section 13
of which provided:

"The public school teachers in the public schools of the district hereby an-
nexed at the time of the taking effect of this act, holding certificates of qual-
ifications, granted in accordance with the laws of the state of New York,
shall not be subject to further examination while said certificates are in full
force, unless a teacher desires an examination for the purpose of obtaining
a certificate of a higher grade."

The plaintiff continued as a principal, and taught the school after
as he had before the statute took effect, with no act on the part of
the school authorities of Brooklyn affecting or in any manner re-
lating to him or his position, until January 8, 1897, when the board
of education passed a resolution authorizing the Superintendent of
Public Instruction to grant to plaintiff (among other teachers) a
certificate equivalent to Head of Department A certificates, in ac-
cordance with article 12, §§ 1, 4, of the by-laws; such certificate to be
issued for a term not longer than one year, but which could be re-
newed from year to year, provided the work of the holder continued
to be satisfactory, and he was retained in the service of the board
of education.  Such certificates, by the terms of the resolution,
entitled the holders to the maximum pay for heads of departments,
but "shall not entitle them to act as principals of schools outside the
Twenty-Ninth, Thirtieth, Thirty-First and Thirty-Second Wards."
On June 18, 1897, a local committee, apparently acting in conformity
with this resolution, submitted to the committee on teachers of the
board of education certain changes in the teachers of school No.
105 (the school in which the plaintiff was then principal), which ap-
pointed plaintiff as head of the department, with the grade of branch
principal, and assignment to classes 7 and 8 G. M.; stating the date
of commencement of service as September 13, 1897, and that both
service and pay ceased on June 30, 1898.  This report was endorsed:

"Regular as to Certificates. William H. Maxwell, Superintendent. J. Weir, Jr."—the latter being a member of the committee on teachers. The committee on teachers subsequently reported to the board of education, at a meeting held June 28, 1897, under the heading, "Appointments for Specified Time"; "School No. 105; Name of Teacher, Frank M. Bogert [the plaintiff]; Grade, Branch Principal; Date, Sept. 13 to June 30."

On January 1, 1898, the city of Brooklyn was made part of the city of New York, by the provisions of chapter 378, p. 380, of the Laws of 1897. By subdivision 2 of section 1061 of this statute the board of education of the city of Brooklyn was made the "school board" of the borough of Brooklyn, and its members were continued in office until the expiration of the terms for which they were appointed, when their successors were to be appointed by the mayor. Their powers, duties, and functions as such board of education continued until February 1, 1898, when they terminated, and thereafter such board possessed only the powers and functions vested in the "School board" by the statute. On January 25, 1898, while it yet was authorized to exercise the powers and functions vested in said board of education of the city of Brooklyn, it adopted a resolution in the following language:

"Resolved, that the Superintendent of Public Instruction be and hereby is authorized to grant to James S. Morey, John F. Harris, Frank M. Bogert [plaintiff] and Moses Becker, Jr., special permanent certificates equivalent to head of department certificates. Such certificates shall entitle the holders to receive the maximum pay for heads of departments, but shall not entitle them to act as principals of schools having more than nine classes nor to be transferred to schools outside the Twenty-Ninth, Thirtieth, Thirty-First and Thirty-Second Wards."

Plaintiff continued in the public school service, as principal and teacher of school No. 105, until June 30, 1898, when he received a notice from the city superintendent of schools of the city of New York that his services would be no longer required, and that he was ineligible to any position in the schools of that city; and he was not thereafter permitted to serve as the head of a department, principal, or to teach, except at irregular intervals, as a substitute, when vacancies existed.

I cannot concur in the contention of counsel for appellant that respondent was a "person holding office for a definite term" at the time the original charter of Greater New York became operative. The respondent had been a principal and teacher in school No. 105 in the city of Brooklyn from July, 1894, when the town of New Utrecht was added to that city, until July 1, 1898. From July 1 to September 1, 1904, he was serving under the contract made with the trustees of the town on June 1, 1893, which became operative September 1, 1893, and remained in force, by its terms, for one year. Thereafter he had no contract, understanding, or agreement with the board of education of the city of Brooklyn as to the term of service, or any of the details connected with his service, and he is not shown to have had any knowledge of the proceedings of the committees of the board of education in 1897. He was not, therefore,

at the time the charter went into effect, employed for a "definite term," nor was he holding "office for a definite term," within the meaning of those words as used in section 1117 of the original charter. He was an employé, merely, not an officer. His term of employment was not fixed or definite, and not within the section limitation. If appellant's claim that respondent's appointment by the board of education as branch principal of school No. 105 for a period covering one school year, from September 13, 1897, to June 30, 1898, was valid and binding upon the respondent, and was in no manner changed or affected by his permanent appointment on January 25, 1898, as the head of a department, and entitled to act as the principal of a school not having more than nine classes, in the named wards, which class and grade he was at the time of such appointment teaching and serving as the principal, were conceded, it would not aid the contention of the appellant, for the reason that when the original charter was enacted, and when it became operative, the respondent concededly was a "teacher in the public school system" of the city of Brooklyn, which became "part of the city of New York" by the provisions of the charter, and by section 1117 was continued in his position as principal and teacher of school No. 105, entitled to the compensation for his services he was then receiving or that might thereafter be provided for such position, and could not be removed, or his services dispensed with, except upon preferred and established charges of "gross misconduct, insubordination, neglect of duty or general inefficiency," in the manner provided by section 1114. It was entirely immaterial in what manner or for what term the respondent was employed at the time the charter took effect. Its only requirement, to entitle the respondent to its protection from summary removal, was that he should then be a teacher in the public school system of the city of Brooklyn. The distinction between the tenure of office of teachers, and persons not teachers, under the provisions of the section, is pointed out by the Court of Appeals in People ex rel. Callahan v. Bd. Education, 174 N. Y. 174, 175, 66 N. E. 675; and the further conclusion reached by that court, that the sections cited had for their object the permanent protection of teachers in the tenure of their positions, unless removed for cause after a trial upon preferred charges, commends itself to us as being the only proper construction that can be given this statute.

It is not pretended by appellant that charges were ever preferred or any proceedings taken under the provisions of these sections to remove the respondent, or that any reason for such action existed. The statute which transferred respondent to the public school service of the city of New York, as a teacher, protected him in the tenure of his position, and prohibited his removal, unless upon charges. The respondent held a diploma issued by the State Normal School to him as a graduate, indorsed by the Superintendent of Public Instruction, which, until revoked or annulled, conclusively established his fitness and qualifications as a teacher, under which he had taught for more than 25 years, both as teacher and principal, 4 years of which time had been spent in one school in the city of

Brooklyn, which could not be limited in the absence of clear statutory authority. Steinson v. Board of Education, 49 App. Div. 150, 63 N. Y. Supp. 128. And he was not subject to further examination while his certificate was in full force and unrevoked. Laws 1894, p. 931, c. 451, § 13.

The learned trial justice adopted the proper measure of damages. The appellant and its officers, through an erroneous construction of the statute, assumed to exercise a power which they did not possess, and the disposition of the case by the trial court was correct.

The judgment and order appealed from should therefore be affirmed, with costs. All concur.