9397.  BOARD OF EDUCATION OF DOERUN v. BACON.

1. The position of a teacher in a public school of a town or city is not
   an "office," but is merely an "employment."
2. The board of education of a town or city has the authority, unless
   such authority is expressly or impliedly denied by statute, to contract
   with a teacher for the latter to teach in its public schools for a fixed
   term; and where, in the absence of such a statute, such a contract has
   been made, and has been breached by the board of education by the
   discharge of the teacher without cause, before the contract term has
   expired, the teacher has a right of action against the board of educa-
   tion for damages for breach of the contract.
(a) Where the language of a statute is that the board of education of
   a named town "shall have. power to suspend or remove" its teachers, the
   board is not thereby prohibited, either expressly or impliedly, from
   making contracts with teachers for a definite period of time; and such
   contracts are valid and binding.
DECIDED MARCH 14, 1918.  ADHERED TO ON REHEARING, APRIL 23, 1918.

Action for breach of contract; from Colquitt superior court—
Judge Thomas.  November 24, 1917.

.  Parker & Gibson, Adams & Adams, for plaintiff in error.

J. L. Dowling, R. J. Bacon, G. H. Richter, contra.

BROYLES, P. J.  This was a suit for damages for the breach
of a contract of employment, brought against the Board of Educa-
tion of the Town of Doerun, Georgia, by one of its school-teachers.
Her petition alleged, that she had been employed by the board,
under a special contract, to teach in its schools for a period of
nine months, at a salary of fifty dollars per month; that after
teaching for something over four months she was wrongfully dis-
charged without notice and without cause; that she had sought
diligently, but unsuccessfully, to secure other like employment to
lessen the damages arising from the wrongful discharge.  The
defendant's general demurrer to the petition was overruled, and
upon that ruling error is assigned.

The General Assembly, in creating the public-school system of
the Town of Doerun (Georgia Laws, 1901, p. 372), provided, in
section 5 of the act (p. 373), "that said board of education shall
have power to design and adopt a system of public school, or
schools, for said town; to appoint a superintendent and employ
teachers; to suspend and remove such superintendent or teachers;
. to fix their compensation; to provide schools by rent, building, or
otherwise; to make and hold titles to such property; and to make
rules and regulations for the government of said schools as they

deem proper and not in conflict with the laws of this State; and to do any and all things promotive of the best educational interests of said town, not in conflict with the provisions of this act or the laws of Georgia." It is insisted by the learned counsel for the school board that under the language of this act, to wit, "that said board of education shall have power . . to suspend and remove such superintendent or teachers," the board has the authority to dismiss a teacher at its pleasure, without cause, whether the teacher is a public "officer" or a mere "employee." We can not agree with this contention. Possibly the board would have that authority in a case where it had made no contract with a teacher for a certain fixed time; but where it had made such a contract, in our judgment it could discharge a teacher for cause only,—provided it had the authority to make such a contract; and, in our opinion, the latter question, to wit, whether the Board of Education of the Town of Doerun had the authority to make the contract with the teacher in the instant case, is the only question to be determined. Nowhere in the act just quoted from is the board of education prohibited, either expressly or by reasonable implication from the language used, from making such contracts. It is insisted, however, that as this act did not *expressly authorize the making* of such contracts by the board of education, and as the term of the teachers' employment was not fixed therein, the teachers employed by the board held their positions at its pleasure, and that the board had no authority to change this status by fixing definite terms for such positions. In support of this contention counsel cite *Wright* v. *Gamble,* 136 *Ga.* 376 (71 S. E. 795, 35 L. R. A. (N. S.) 876, Ann. Cas. 1912C, 372). In that case the Supreme Court held as follows: "Where the tenure of an *office* is not prescribed by law, the power to remove is an incident to the power to appoint. In such a case the appointee holds at the pleasure of the appointing power, although it attempts to fix a definite term; and no formalities, such as the preferring of charges or the granting of a hearing to the incumbent, are necessary to the lawful exercise of the authority of removal." (Italics ours.) It is clear from the headnote and the language of the opinion that that decision adjudicated the rights of a holder of a public "office," the tenure of which was not specifically prescribed by law, but the duties of which were. There Gamble, the plaintiff in the quo

warranto proceedings, was a duly appointed and qualified public officer, who had taken an official oath and had given bond with security for the faithful performance of his duties, and who, after his removal from office, brought proceedings against his successor in office, for the purpose of regaining *possession of the office.* There was in Gamble's appointment to office no element of contract, as in the instant case. We find in the opinion in that case no language which would extend the doctrine there laid down (as applicable to a "public officer") to cover a contract of employment between the board of education of a town and a teacher employed by that board under a definite contract for a fixed period of time.

While a public-school teacher is a public "employee," we do not think he or she could be considered a public "officer" within the meaning of the ruling in the *Gamble* case. As was said by Chief Justice Marshall, in United States *v.* Maurice, 2 Brock. 102, 26 Fed. Cas. 1211 (adopted in United States *v.* Schlierholz, 137 Fed. 616, 622), "Although an office is an 'employment,' it does not follow that every employment is an 'office.' A man may certainly be employed under a contract, express or implied, to do an act or to perform a service without becoming an officer." And in the Schlierholz case it was said: "An 'office' is defined to be an employment on behalf of the government in any station of public trust not merely transient, occasional, or incidental. It is a special trust or charge created by competent authority. The officer is distinguished from the employee in the greater importance, dignity, and independence of his position, in being required to take an official oath, and perhaps to give an official bond, in liability of being called to account as a public offender for misfeasance or nonfeasance in office, and usually, though not necessarily, in the tenure of his position." "The distinction is plainly taken between a person acting as a 'servant' or 'employee' who does not discharge independent duties *but acts by the direction of others,* and an 'officer' empowered to act in the discharge of a duty or legal authority in public life." (Italics ours.) Padden *v.* City of New York, 92 N. Y. Supp. 926, 928 (45 Misc. 517), and other authorities cited in 4 Words & Phrases (2d series), 699, 700. "Not every person in the service and pay of a municipal corporation is an officer. The distinction between an office and an employment is well recognized. . . A janitor or a night watchman in a

public building, a *superintendent of public schools* exercising no power except what is derived through the school board, a visiting physician at a public hospital, a fireman, and a filing clerk of the public records, are not officers." (Italics ours.)   19 R. C. L. 912, § 209; Baltimore *v.* Lyman, 92 Md. 591 (48 Atl. 145, 84 Am. St. R. 524, 52 L. R. A. 406). See also, in this connection, 29 Cyc. 1366-C, 1367; Throop *v.* Langdon, 40 Mich. 673. If a "superintendent of schools, exercising no power except what is derived through the school board," is not an "officer," a fortiori, a mere teacher, under such a superintendent, is not. "A public office is the right, authority, and duty, created and conferred by law, by which for a given period, either fixed by law or enduring at the pleasure of the creating power, an individual is vested with some portion of the sovereign functions of the government, to be exercised by him for the benefit of the public." Mechem on Offices and Officers, § 1, and authorities there cited. The warrant to exercise such powers or functions "is conferred, *not by a contract, but by the law.* It finds its source and limitation in some act or expression of governmental power." (Italics ours.) Wyman's Administrative Law, Public Officers, § 44, p. 143, and authorities there cited.

In distinguishing between an "office" and an "employment," the fact that the powers in question are created and conferred by law is an important criterion. For though an employment may be created by law, it is not necessarily so, but is often, if not usually, *the creature of contract.* A public office, on the other hand, is never conferred by contract. As was said by Chief Justice Marshall in the Maurice case, supra: "I do not think that the mere direction that a thing shall be done, without prescribing the mode of doing it, can be fairly construed into the establishment of an office for that purpose, if the object can be effected without one." And, therefore, where the authority in question was conferred by a contract, it must be regarded as an "employment" and not as a public office. Hall *v.* Wisconsin, 103 U. S. 5 (26 L. ed. 302); United States *v.* Hartwell, 6 Wall. 385 (18 L. ed. 830); Shelby *v.* Alcorn, 36 Miss. 273 (72 Am. D. 169); People *v.* Nostrand, 46 N. Y. 381. See, also, in this connection, *State ex rel. Mayor &c. of Savannah* v. *Dews, R. M. Charl.* 397, wherein it is held that laws creating a public office are not *contracts* with

the incumbent, within the purview of the constitutional inhibition against the impairment of contracts. It follows, therefore, that where the employment is contractual, such employment is not and can not be an "office." There is no element of a contract in the holding of a public office. The holder is under no obligation to discharge his duties a single day. He may resign at any time, and no power of the government can prevent him; nor does he enter into any agreement that he shall receive any particular compensation for the time he shall hold office. Mechem on Public Officers, 295, § 463. In Daily *v.* Freeholders of Essex, 58 N. J. L. 319 (33 Atl. 739), the Supreme Court of New Jersey held: "It is clear from the provisions of this section of the act that the prosecutor, a janitor of the court-house, was protected from removal unless for cause and upon notice and a hearing. There exists no justification for the suggestion that he held a public *office.* He was holding a *position.* He was no more a public *officer* by virtue of his appointment as janitor than is the janitor of an insurance building an officer of the insurance company that occupies it. This is too clear, indeed, for further discussion." (Italics ours.)

In some jurisdictions it has been held, and in some it is a matter of statute, that a teacher who has been employed for a definite term can be dismissed only at the end of his term of employment; and if before the expiration of such term, only for just and sufficient cause. 35 Cyc. 1088, note 82. "Where a teacher is wrongfully removed or dismissed, and he holds himself in readiness to teach at all times before his contract expires, and is unable to obtain other employment, he is entitled to recover the agreed compensation for the remainder of the term contracted for." 35 Cyc. 1100 C; School Dist. No. 3 *v.* Hale, 15 Colo. 367 (25 Pac. 308); Park *v.* DesMoines etc., 65 Iowa, 209 (21 N. W. 567); Underwood *v.* Prince George County School Commissioners, 103 Md. 181 (63 Atl. 221); Steinson *v.* New York Board of Education, 49 App. Div. 143 (63 N. Y. Supp. 128); affirmed, 165 N. Y. 431 (59 N. E. 300); McPherson *v.* Usborne School Sec. 7 (Canada), 1 Ont. L. R. 261; 43 Cent. Dig., title "Schools and School Districts," § 310. "A teacher can not as a rule be removed or discharged except on charges preferred, and after trial; and if one is unlawfully removed, he is entitled to recover his salary

for the time after such removal, less any sum he may have earned as a substitute during such time." 28 Cyc. 580 e; Bogert *v.* New York Board of Education, 44 Misc. 10 (89 N. Y. Supp. 737), affirmed, 106 App. Div. 56 (94 N. Y. Supp. 180).

It has been held that under a charter giving a board of education power to employ teachers, the position of a teacher is that of an employee, resting on the contract of employment, and not that of an officer of the board. 28 Cyc. 580 e; Steinson *v.* N. Y. Board of Education, supra. See also 1 Dillon on Municipal Corporations, 736, § 425.

It will be seen from the foregoing that the great weight of authority in other States, and in the text-books, is that a teacher is a mere "employee" and not an "officer;" and that where a board of education has made a contract with a teacher for a fixed period of time, the teacher can be discharged, before the contract period has expired, only for cause. While this point seems never to have been squarely passed upon in this State, the ruling of the courts of our sister States is persuasive authority for us to hold likewise. Moreover this holding is based upon justice and sound public policy. Furthermore, that a public school teacher who has been employed for a definite period of time is entitled to have notice, and to be dismissed for cause only, seems to be the policy and the understanding of our State Board of Education. The act of 1911 (Acts 1911, p. 94, Park's Ann. Code, § 1565 c), creating that board, requires, among other things, that the board shall "provide rules and regulations for the supervision of all schools in the State." Among the rules promulgated by the board, through the State superintendent of schools, and of which this court will take judicial cognizance, is the following, dated January 8, 1916 (Georgia School Laws and Decisions, 83 c. 11, note 13). "Without fixed charges, it is not according to the letter or the spirit of the Georgia law for a teacher to be summarily discharged, at the whim of a board, without trial, after being elected for a specified term, unless such provision is stated in the contract." We take it that the clause in the act creating the State board which reads "that the board of education shall provide rules and regulations for the supervision of *all* schools in the State" (italics ours) refers, of course, to public schools only; and possibly only to State or county schools, and to such municipal schools as receive appropriations, or an ap-

portionment of funds, from or through the State. It appears, however, from the 45th Annual Report of the Department of Education to the General Assembly of Georgia, published in 1917 (p. 312), that the public schools of the Town of Doerun, Georgia, do receive such an' annual apportionment of funds from the State.

While we realize that this rule of the State Board of Education has not the force of a statute, we think it is good persuasive authority. As was said by Mr. Justice Cobb in *Temple Baptist Church* v. *Georgia Terminal Co.,* 128 *Ga.* 680 (58 S. E. 161): "This court, and all other courts, will recognize the practice of co-ordinate departments of government, and allow the construction placed by the officers in such departments upon statutes, and even the constitution, to be operative where there is room for construction." This court has held to the same effect in *Griner* v. *Baggs,* 4 *Ga. App.* 232, 235 (61 S. E. 147). See also 15 R. C. L. 1110, § 40, note 20, and authorities cited.

The case of Auburn Academy *v.* Strong, Hopk. (N. Y.) 278 (35 Cyc. 817F), cited and relied upon most strongly by counsel for plaintiff in error, decides merely that trustees of a school, empowered by statute to appoint and remove teachers *at pleasure,* have no power to make a contract with a teacher limiting their right to remove him *at pleasure.* That question is quite different from the one here adjudicated. In the instant case, under the clause in section 5 of the act creating the public-school system of Doerun, which reads, "and to do any and all things promotive of the best educational interests of said town, not in conflict with the provisions of this act or the laws of Georgia," we think, by reasonable implication at least, the board of education is authorized to enter into a contract with a teacher for the full scholastic year, such as the one set up in the petition, since it would doubtless be difficult to secure competent and experienced teachers for the schools of Doerun if they knew they were liable to be discharged at any time, without cause, at the whim or pleasure of the school board, after the scholastic year had begun, when they would probably be unable to secure employment in other schools for that year. It seems clear to us that it would be "for the best educational interests of the Town of Doerun" for its board of education to have authority to make such contracts, and, in our opinion, such con-

tracts do not conflict with the provisions of the act cited, or any of the laws of this State.

It follows that the petition set forth a cause of action, and that the court did not err in overruling the general demurrer.

*Judgment affirmed. Bloodworth and Harwell, JJ., concur.*