No. 41.—THE JUSTICES OF THE INFERIOR COURT OF CLARK COUNTY, plaintiffs in error, *vs.* GREEN B. HAYGOOD, administrator, &c. defendant in error.

[1.] By our Judiciary system, either party to a suit at Common Law, is entitled, on the appeal, to be heard upon the whole merits of his case, although there has been a demurrer to the petition, on the ground that the plaintiff is not entitled to recover upon the cause of action there alleged, judgment thereon, at the first trial, and such judgment entered on the minutes.

[2.] The Justices of the Inferior Court, in our State, cannot be sued as a *quasi* corporation, unless provision be made by Statute, authorizing the same.

Case in Clark Superior Court. Tried before Judge JACK-
SON, at February Term, 1854.

This was an action brought by the administrator of James
Hendon, former Sheriff of Clark county, against the Justices
of the Inferior Court of said county, alleging that one John
Totty had been arrested by the Sheriff, on a *ca sa*, and impris-
oned in the common jail of the county, from which he escaped,
by reason of its insufficiency; that the Sheriff had been sued
in an action of "debt" by the creditor, and made liable there-
for. This suit was to recover the damages thus sustained by
the Sheriff.

At the first term, defendants demurred to the declaration,
which was over-ruled by the Court, and judgment entered
thereon.

At the trial, defendants challenged one Nathan Cook, as an
incompetent Juror, on the ground that his wife was the sister of
the wife of one of the distributees of James Hendon, deceased.
The Juror's wife was dead, leaving issue. The Court over-
ruled the challenge, and this is the first error assigned.

Plaintiff's counsel moved to strike certain Jurors from the
list, for cause, on the ground that they were tax-payers of this
county, and liable to pay the verdict, waiving his exception to
the balance. The Court sustained the objection, and this de-
cision is assigned as error.

The plaintiff's counsel then moved to insert the names of
two newly elected Justices, as parties defendant, which being
granted, is also assigned as error.

Plaintiff's counsel then moved to strike out a plea filed by
the defendants, that the debtor, John Totty, was insolvent at
the time of his escape. The Court sustained the motion, and
this decision is assigned as error.

Plaintiff's counsel offered in evidence, sundry presentments
of the Grand Jury of Clark county, in which they presented
the jail as insufficient, so far as the debtor's room was con-
cerned; the first of which was at the term immediately succeed-

ing the escape of Totty. The admission of this evidence is assigned as error.

Plaintiff's counsel offered in evidence, an order of the Inferior Court of Clark county, requiring the Sheriff to furnish the debtor's room with a chair and table, passed subsequent to the escape of Totty, to rebut the plea of defendants, that the escape was effected by the negligence of the Sheriff, in allowing the prisoner a chair and table. The admission of this evidence is assigned as error.

The defendant's counsel requested the Court to charge—

1st. That the Inferior Court, as the representatives of the county, were not liable to this action; nor did the facts charged and proved, authorize a recovery against the defendants in this case.

2d. That the Sheriff was not liable to the creditor, where the escape happened from the insufficiency of the jail, when the county were bound to furnish the jail.

3d. That any jail is sufficient, from which a prisoner cannot escape without assistance from without.

The Court declined to charge on the first two grounds, because these questions were settled by the judgment, on the demurrer, which was unreversed.

To this refusal to charge, defendants excepted.

The Court charged the Jury, on the 3d ground, that in the opinion of the Court, the doctrine of the old English law was still the law of Georgia, viz: that the jail, to be sufficient, must be such as will withstand all attacks, save the act of God and the King's enemies; but in this case, it was unnecessary to hold to this extent; for if the jail was such that persons from without, might, through the windows, contrive into it an augur or club, axe or handsaw, such as had been testified about, the jail was an insufficient one in law.

To this charge, defendants excepted.

The Court charged, as to the damages, that the amount recovered from the Sheriff, was *prima facie* evidence of the damages sustained, but not conclusive; that the county might go behind the judgment, and show anything in mitigation of dam-

ages, that Hendon could have showed, but having failed to do·so, the Court charged, that if the Jury found for the plaintiff, the measurement of damages, in this case, was the amount recovered against the Sheriff, on account of Totty's escape.

This charge is also assigned as error.

W. H. HULL, for plaintiffs in error.

T. R. R. COBB, for defendant in error.

*By the Court.*—STARNES, J. delivering the opinion.

Several very interesting and important questions are presented by this record; and they have been discussed with an ability which would render us great assistance, in the endeavor properly to decide them. But the view which we take, of the right of the defendant in error, to maintain the action in the Court below, against the plaintiffs in error—a question on which all the others depend—makes it unnecessary for us to consider most of these, as that view must dispose of the case before us.

It is not for us to assume, that these points will again be brought before the Court below for adjudication; and it is therefore, perhaps, better that we should give no opinion on any except that to which we have referred, and another, which, as a question of pleading and practice, may be said to be preliminary to it.

[1.] That other question grows out of a decision upon exceptions on demurrer to the declaration, at the first trial, it being held, upon the final trial, that this judgment on the demurrer precluded the plaintiff in error from being again heard on the point then decided, such judgment having been formally entered up and placed upon the minutes.

By the provisions of our Judiciary system, an appeal at Common Law wholly vacates the judgment on the first trial, for all the purposes of a re-hearing. It operates precisely, in this respect, as if a *new trial* were granted. It is, in fact, a *new tri-*

*al*, and is so denominated in the Judiciary Act of 1797. (*Crawf. & Marb. Dig.* 280.)

In other States, where there is similar legislation, allowing appeals, such an appeal is regarded as a new trial. For example, the Supreme Court of Massachusetts say, that "the effect of an appeal, properly taken, is to vacate the judgment appealed from". *Campbell vs. Howard*, (5 *Mass.* 376.) *Murdock, Appellant*, (7 *Pick.* 327.) In the case of *Boynton vs. Dyer*, (18 *Pick.* 4,) the Court, speaking of an appeal, says: "that the whole case is to be tried over again, as if it never had been tried".

Such has been the uniform construction put upon our Judiciary Acts, in the Courts of our State, we believe, from the time when the venerable Judge *Walton* first used the expressive language, that upon appeal, the case was to be tried "*in its totality*".

In this case, after the decision upon the demurrer, the defendants, (now plaintiffs in error,) confessed judgment to the plaintiff, were allowed an appeal; and in our opinion, were entitled to be heard in the Court below, upon all the merits of the defence.

[2.] Upon looking to that defence, we find a question lying at the foundation of this whole proceeding, viz : whether or not these plaintiffs in error, as a *quasi* corporation, are liable to be sued in this action ?

It is very certain, that the Justices of the Inferior Court, in each county of our State, have been, by law, endowed with certain attributes or powers, which, for some purposes, constitute them, as it were, a corporation. And thus makes them, as this Court has decided in the case cited at bar, what is technically termed a *quasi* corporation. As such, *quasi* corporation, we have held, that they may bring suit in and concerning all matters, touching which they are endowed with these powers. But as such *quasi* corporation, can they be sued ? That is now the question.

It is insisted, that these capacities to sue and be sued, are

necessarily correlative; that the one implies the other. This is not entirely accurate; for we know that the State may sue, and yet, cannot be sued, without its consent, by Statute manifested. By our laws, too, non-residents of the State may bring suit, personally, in any Court within the State; yet, they cannot be sued, except where the sovereign will has said, that they may be sued by a proceeding *in rem.*

So the sovereign will of the State, in the creation of this Inferior Court, and in the exercise of legislation from time to time, may have conferred upon it such capacities, clothed it with such trusts, and required of it such duties, as, in the very nature of the case, enable and qualify it to contract and to bring suit against persons violating contracts with it, or committing injuries upon property intrusted to its care; and yet, in the nature of things, this Court may not be (as the State is not) subject to suit—the expression of that sovereign will having stopped short of a provision to this effect.

We have put two cases: one in which a *quasi* corporation may sue and cannot be sued; the other, in which a natural person may sue and cannot be sued. What is the reason that this is true in these cases?

The common answer is, that the State cannot be sued, because it is sovereign; that is to say, all suits in its territories, are brought by authority of its own sovereign power; and the sovereignty cannot, as it were, sue itself. We know, however, that it may be sued, with its consent, in its own Courts. In an elementary point of view, it is evident, that in case of suit without its consent, there would be, not only no power to enforce process and judgment, but there would be no person against whom to enforce it, and nothing out of which to secure payment; there would be, in short, no *reus*, personally or constructively, a party to such Judicial proceedings, and against whom, or whose property the judgment might be enforced.

So, in the case of a non-resident, where property is not attached; there is no person against whom to enforce the judgment, and nothing out of which payment may be made.

If, as a *quasi* corporation, the Inferior Court be in a cate-

gory similar in principle, the conclusion is authorized, that they cannot be sued, except by Statutory authority; that is, until some provision be made, by virtue of which, effect may be given to a judgment against them.

The proceeding in this case, is against the defendants, as a *quasi* corporation, and not as individuals. And, to use the language of the Supreme Court of New York, applied to overseers of the poor, a similar *quasi* corporation, "they cannot, for official liabilities, be rendered individually responsible for the judgment, in their persons and property". (*Flower vs. Allen,* 5 *Cow.* 670.) This was acknowledged, indeed, by the counsel for the defendant in error; and he admitted, that the judgment must go against them, as a corporate or *quasi* corporate body, or not at all.

The plaintiffs in error are sued, then, as representing the county—precisely, as though they were five thousand, instead of five in number—in fact, precisely as though they were the county.

It is avowed, that judgment is asked for against them, in order, as it said, that "a liability may be fixed"; and payment may be sought, from the taxation of the county. But, if judgment be obtained against them, as the execution must always follow the judgment, the execution must issue against them. An execution against them, cannot certainly be enforced against the county, generally; and an inherent difficulty, therefore, lies in the way of such a suit.

A private corporation may be sued, because it has not only a corporate responsibility, but a corporate fund or property, against which the judgment may be enforced. A very different rule prevails, with regard to the inhabitants of any districts—as counties or towns, incorporated by Statute, which come under the head of *quasi* corporations; for against them, no private action will lie, unless given by Statute". (*Ang. & A. on Corp.* 499.)

There can be no doubt that, at Common Law, such an action could not be maintained against such a body.

An action could not have been maintained against the Hun-

dred, on account of robberies, &c., committed therein, but for the Statute of *Winton*, (13 *Edw.* 1,) which "converted the Hundred into a corporation for this purpose". (2 *Wils.* 92, 93.) So, in the case of *Russell et al. vs. The Men of Devon*, (2 *D. & E.* 661,) it was decided, that such an action could not be sustained, at Common Law, against a county, on account of injuries resulting from a bridge being out of repair—Lord *Kenyon* saying, that "there is no precedent of such an action having been before attempted"; and Mr. Jus. *Ashurst* remarking, that "no such action has ever been brought, though the occasion must have frequently happened".

' We have not been content, however, with simply ascertaining, that Courts have said this action could not be sustained ·at Common Law. We have endeavored to discover ·the radical reasons for the rule. These reasons, we find, have their root in the very foundations of administrative justice.

*Lex non frustra facit,* is a first principle or maxim of our jurisprudence. *The law will not, itself, attempt to do an act which would be fruitless.* This is said to be "a maxim of our legal authors, as well as a dictate of common sense". (*Broom's Leg. Max.* 185. *Kent, Ch. Jus.* 3 *John. R.* 598.)

A proceeding, such as that which has been instituted against these plaintiffs in error, is precisely of this character. They are not liable, personally, nor by their property, as individuals, as we have seen—they have no corporate property, with which they may be constrained to satisfy the judgment, or out of which payment may be enforced; and the Court, if it granted the judgment, would be powerless to enforce it in any way. If a judgment were obtained against the plaintiffs in error, they would have no power of themselves, even to tax the county for its payment. By law, they can lay a tax, only upon recommendation of the Grand Jury; and then, not more than .50 per cent upon the county tax.

In trying such a case, therefore, against these plaintiffs in ·error, the Court, even if it had a *reus* before it, in judicial contemplation, would not, itself, be acting in the true character of the *judex.* He who sits as Judge, in a Court of Justice,

should have the power to enforce his judgments; and when a proceeding is brought before him, in which he has not this power, it falls without the scope and limit of his jurisdiction, in that form of proceeding, at least. Hence, the propriety of the maxim I have quoted. Hence, too, that other maxim, *lex neminem cogit ad vana seu inutilia.* (5 *Rep.* 21, *Co. Lit.* 197, *c.*) On this subject, Ch. Jus. *Kent,* giving a sort of free translation to this maxim, says, that " the law will not attempt to do an act which would be vain, or to enforce one which would be frivolous"; and further, "that a Court will not undertake to exercise power, but when they exercise it to some purpose". *Trustees of Huntington vs. Nicholl,* (3 *John. R.* 598.) To the same effect, *Rex vs. Bish. of London,* 13 (*C ast.* 420, note a.) *King vs. Jus. Pembrokeshire,* (2 *B. & Ad.* 391.)

It was upon this principle, that the Court decided, in the case of *Russell vs. The Men of Devon,* above cited, that "if the county is to be considered as a corporation, there is no corporate fund out of which satisfaction is to be made"; and, therefore, they thought "the experiment ought not to be encouraged".

The case of the *King vs. St. Catharine's Dock Comp'y,* (4 *Barn. & Ad.* 360,) presents an illustration of this doctrine. There, two actions had been commenced—one at the suit of *Glyn, Treasurer of the above Company, vs. Corpe,* and the other at the instance of *Corpe against Glyn, as Treasurer.* The charter of the company provided that the body or individual property of the treasurer, should not be liable to be taken in execution, on any suit against him, as treasurer, though it authorized suit against him, in that character. The above suits were referred to arbitrators, who decided in favor of Corpe, and against the treasurer. A *mandamus* was then sued out by Corpe, against the company, calling on them to pay the amount so found to be due by the treasurer. Objection was made to the *mandamus,* on the ground that there was no want of a specific remedy; " for an action might have been brought on the award—and though it would have been formally against Glyn, as treasurer, yet, it really would have been against the company,

and execution might have issued against their effects". The Court held, that *mandamus* was the proper remedy because, as it remarked, "it does not appear that Corpe has any power ·of taking, in execution, the goods of the company. An action, on this award, must be against the treasurer, and the judgment would be against him; and as the execution would follow the form of the judgment, it would be against Glyn, as treasurer; but the Act of Parliament, incorporating the Company, provides that the body and goods of the treasurer shall not, by · reason of his being defendant, be liable", &c.; and therefore, " there is no other mode by which payment of the debt can be enforced, but a *mandamus*". Thus, in effect, that Court, (Lord *Denman* presiding,) decided that a suit upon the award would not be sustained, because it would be fruitless—the Court having no power to enforce its judgment, in that proceeding.

In the case of *McKinnon vs. Pennon,* (18 *Eng. L. & Eq. R.* 509,) decided in the Court of Exchequer, in England, as late as January, 1853, the doctrine laid down in *Russell vs. The Men of Devon,* was affirmed.

Several American Courts have taken the same view of this subject, which we have endeavored to enforce. *Riddle vs. The Proprietors of Lock, &c.* (7 *Mass.* 169.) *Mower vs. Leicester,* (9 *Mass.* 247.) *Merchant's Bank vs. Cook,* (4 *Pick.* 414.) *Ward vs. County of Hartford,* (12 *Conn.* 404.)

And finally, we add, that Courts, generally, if not invariably, in our own State, have entertained the opinion that suit could not be brought against the Inferior Court, without Statutory provision to this effect; (some counties having, as to their Courts, obtained such Statutory sanction,) and the Convention of Judges have decided, that "the Inferior Court is not a corporation, and cannot be sued as such". *The State ex. rel. John Forsyth vs. Justices of Inf. Court Richmond County,* (*Dud. R.* 39.)

Judgment reversed.