### 3327. TAYLOR *et al..* trustees, *v.* MATTHEWS *et al.*

1. The trustees of the school districts created under the provisions of § 1531 of the Political Code (1910) are empowered to make contracts in relation to school matters, and to acquire and hold any other property for school purposes, and are invested with capacity to sue and be sued, where their rights or liabilities as school trustees are involved.

2. In the absence of express legislation to the contrary, sound public policy requires that the exercise by the board of trustees of a school district of its discretion as to the expenditure of funds raised by taxes from the citizens of the district for educational purposes should not be interfered with or controlled, unless there is a manifest abuse of discretion, or an expenditure of the funds for some purpose wholly disconnected therefrom.

3. School funds derived from local taxation within a school district may properly be expended by the trustees of the district in protecting or preserving the right of local taxation for educational purposes, by the employment of an attorney, or in other legitimate expenses, necessary for presenting their rights in the adjudication of the case.

4. It is within the power of trustees of any school district in this State to provide means by which all children of school age in that district may receive the benefit of the school fund belonging to the district. And to that end they may either contract with the trustees of an adjoining school district for the payment of the tuition of non-resident pupils to themselves, or agree to pay to the trustees of an adjoining school district, whether in the same or in an adjoining county, the tuition of resident pupils when they determine that these pupils can more advantageously or conveniently attend the school of the adjoining district than the school of the district in which they reside.

5. The title to public-school money paid into the hands of trustees of a school district while local taxation for school purposes was in force is unaffected by the fact that the local-tax law was thereafter repealed or abolished by the provisions of § 1536 of the Political Code (1910).

6. The judgment was authorized by the evidence.

Action on bond; from city court of Carrollton—Judge Beall. March 14, 1911.

Taylor and Brooks, as trustees of Wesley Chapel school district in Carroll county sued Matthews as principal, and Griffin as surety, on a bond given by Matthews as treasurer of a former board of trustees of the school district. The petition alleged a breach of the bond, and a consequent indebtedness to the petitioners as trustees, in the sum of $106.35, with interest, by reason of the fact that Matthews, as treasurer, had failed to turn over to his successor in office, or fully account for, that amount of the funds entrusted to him. It alleged that the sum sued for was paid out illegally, in that Matthews paid from the school fund $50 to an attorney, as

a fee for resisting proposed legislation affecting Wesley Chapel school district, $6.35 for railroad fare and expenses of certain persons coming to Atlanta to resist the proposed legislation, and $50 to a teacher whose school was in Paulding county, for teaching children who resided in Wesley Chapel school district. The bond of Matthews as treasurer contained the condition that, "whereas the said obligees [J. W. Brooks, W. E Smith, and G. S. Matthews, as trustees of the Wesley Chapel local-tax school district] elected said Matthews, principal, treasurer of said board of trustees, now, should he fully discharge the duties of said office and faithfully account to said obligees for all funds coming into his hands as treasurer, and return such as may be in hand when his term expires to his successor, then this bond to be void, otherwise of full force and effect."

Matthews pleaded that he had fully discharged his duties as treasurer, and had fully accounted to the proper authorities for all money received. He admitted the payment of the attorney's fee of $50, and defended upon the ground that the payment was in pursuance of a contract made with the attorney by his associates and himself as trustees, under the following circumstances: "The people of said district had voted the local-tax law in, and the trustees had successfully resisted their efforts to set aside the law in the courts, by securing a decision in favor of the school in the Supreme Court, Mr. Holderness being of counsel for said trustees in said litigation; and the movants in said litigation then proposed to have passed by the Georgia legislature a local bill, which was drafted and presented to the proper committee, abolishing the school district, and he was employed by the board to make an argument on the constitutionality of said bill before a house committee. The committee took the view he presented and killed the bill." As to the payment of the $6.35 the defendants pleaded, that "the trustees thought that said legislation was vicious. They knew that quite a number of people would testify before said committee in favor of the bill. Therefore it was suggested by the board that Mr. Matthews, Mr. Smith, and Professor Ira Williams should also appear before said committee, which they did, and the actual expenses of said trip be charged; all of which was in the interest of the school as they conceived it. After the killing of the bill the defendant Matthews was directed by the president of the

board to issue a draft in favor of Mr. Holderness, and to issue a draft covering the expenses of the said parties who testified before said committee.   They plead and insist that the same was in the interest of the school and insist that they had a legal right to make such an expenditure for the protection of the school interests of said district." The defendants admitted also that Matthews paid $50 to J. R. Cole, teacher of the county of Paulding, in settlement of the tuition of children living in Wesley Chapel school district who attended the Cole school, but pleaded, as justification of his action, that he was instructed by the county board of education of Carroll county to make the payment.   It was further pleaded that at the time a settlement was demanded of Matthews by Taylor, one of the plaintiff trustees, an election had been held which had resulted against local taxation, the election being held in December, 1909, and Taylor not being commissioned by the county board of education until January 6, 1910; also that after the repeal of the local-tax law the trustees of the school district had no right to receive the funds in the hands of Matthews, but that the county board of education of Carroll county alone had the right to receive the funds in his hands, and that Matthews made a full and complete settlement with the county board.   It was also pleaded that before making the settlement with the county board of education Matthews consulted the attorney-general and the State school commissioner, and was directed to settle with the county board of education of Carroll county, and required by law not to settle with Taylor, and that in the settlement with the county board the authority of the trustees of the school district to employ counsel and send witnesses before the legislative committee to testify in behalf of the school was recognized.

The bond signed by Matthews was put in evidence, and the case was submitted to the decision of the trial judge, without the intervention of a jury, upon the following agreed statement of facts:

"Plaintiffs in this case are the only trustees of Wesley Chapel school district in said county.   J. F. Brooks was elected and qualified as such trustee in December, 1908; W. A. Taylor was elected in December, 1909, and qualified in February, 1910.   J. F. Brooks succeeded J. W. Brooks as trustee.   Taylor succeeded G. S. Matthews.   W. E. Smith was third trustee and resigned after Taylor qualified.   No successor has been elected.   On December 12, 1907,

J. W. Brooks, G. S. Matthews, and W. E. Smith were trustees of said local school district. Previous thereto said Matthews was elected secretary and treasurer of said board, and executed and delivered the bond sued on on December 12, 1907, with M. E. Griffin as security. On July 27, 1908, said Matthews paid out of the funds in his hands, as secretary and treasurer, $6.35, railroad fare to Atlanta and return, for three men to testify before a house committee in behalf of the school, in resisting a local bill affecting said school district, looking to the abolishment of local tax; also, March 11, 1909, paid S. Holderness out of said funds $50, for appearing before said legislative committee in opposition to said local bill, he having advised that said local bill was unconstitutional. The bill did not pass. On January 3, 1910, said Matthews, as said treasurer, paid out of said fund to J. R. Cole, a teacher of Paulding county, $50, for teaching the pupils of Wesley Chapel school district attending said Cole's school in Paulding county, in pursuance of the following order of the county board of education: 'December 28, 1908. The trustees of Wesley Chapel local-tax school district and some of the citizens of said district appeared before the board, asking that this board relieve the situation in said district by cutting the lines in said district or recommending the paying of teachers in other contiguous schools the pro rata part of the school fund for said pupils, or the location of another school in said district. Upon consideration this board of education recommend that the local trustees of Wesley Chapel local district transfer such pupils as are too inconveniently situated to attend the Wesley Chapel school to such other schools as they may see proper, paying for same out of the appropriations made by the board of education to said district and out of the local tax collected in said district.' The $6.35 above referred to was paid by order of the majority of the local board of trustees, J. W. Brooks being absent. The said $50 paid S. Holderness was paid in pursuance of a contract made by a majority of the local board of trustees, Brooks not being present. On the 1st day of February, 1910, J. F. Brooks as treasurer of said local board, demanded the aforesaid sums of money of said G. S. Matthews, and he refused to pay the same to him. Prior to said demand said J. F. Brooks had been elected secretary and treasurer, and qualified as such by giving bond. On December 7, 1909, there was an election held in said district on

the question as to whether or not local tax should continue or be abolished, which resulted in the abolition of local tax for said district. On the 17th of February, 1910, the board of education of Carroll county authorized the county school commissioner to have a settlement with G. S. Matthews, treasurer of said local-tax school district, and to take charge of such funds as may be in his hands as such treasurer, and also to receive as such county school commissioner such funds as may be in the hands of M. E. Griffin, tax collector, of local tax collected by him and now in his hands; this action taken in pursuance of a ruling of the attorney-general. On February 26, 1910, in pursuance of said action of said county board of education, J. S. Travis, as county school commissioner, had a settlement with the said G. S. Matthews, as said treasurer, and approved his accounts, paying out said items, receiving from him $62.47, and receipting him in full for all funds in his hands as treasurer."

The court rendered judgment in favor of the defendants, and the plaintiffs assign error upon the judgment.

*W. F. Brown, C. E. Roop,* for plaintiffs.

*S. Holderness,* for defendants.

RUSSELL, J. (After stating the foregoing facts.)

1. Under the pleadings and the evidence, the first question which arises is as to the power of the trustees of a school district, and especially as to their power and authority to bring a suit. We deal with this phase of the case first, because the defendants in their plea question the right of the present trustees to pursue the instant action, and also because it seems to us that if the trustees of the school districts, provided for by law, can employ counsel and maintain an action brought upon a breach of their treasurer's bond, perhaps the trustees of the same district would be authorized, in their discretion, to employ counsel to invoke the protection of their rights in another proceeding and in a different forum, and even to appear before a legislative committee in opposition to proposed legislation directly affecting the trust with the preservation and administration of which the trustees are charged. By the terms of the Political Code (1910), §§ 1531, 1532, 1533, provision is made for the creation of school districts, into which the law requires each county to be subdivided; for the election of three trustees for each school district, and for the

election of a secretary and treasurer, who must be a member; and § 1537 prescribes the powers and duties of the trustees and of the secretary. Some of the duties of the trustees are specifically defined in the code, but many of their duties and powers must be implied from the nature of the office and the trust imposed upon them. In the absence of an express definition of their powers, or of any limitation upon them in the statute, it must be assumed that there is an implied grant of enough power to enable these trustees to discharge the duties and effectuate the trust imposed upon them. This view has been taken in other jurisdictions. The trustees of school districts are generally vested with the power of making contracts in relation to school matters. They have been empowered by statute, in this State, to borrow money for certain purposes, and usually they have power to acquire and hold land and other property for school purposes, and are invested with capacity to sue and be sued, where the rights of their trust are involved. 25 Am. & Eng. Enc. Law (2d ed.), 44, 45, and citations. We may remark, in passing, that the right of the plaintiffs to bring the present suit depends upon the assertion of this principle.

2. It is apparent, from consideration of the various sections of the code which deal with the organization and administration of our public-school system that it was the intention of the legislature to deal with the subject in a broad, general way, leaving matters of detail largely to the discretion of those specially charged with the conduct of our public-school system. (See Political Code (1910), title 11, chapter 4, article 9, which article deals with the formation of school districts, the election of trustees, and the levy of local tax for public schools, both by counties and by school districts.) It is declared, in § 1545, that "it is the purpose and spirit of this Article to encourage individual action and local self-help upon the part of the school districts," but "it is expressly understood that the general school laws of this State as administered by the county board of education shall be observed." We apprehend this section to mean that as the county board of education is subordinate to the State board of education and to the State commissioner of education, who is its chief executive officer, so the authorities of a school district laid out according to law are to be subordinate to the regulations of the county board of education, and, nevertheless, individual action and local self-help on the part of the school dis-

trict is to be given the fullest recognition by those charged with administration of our public-school system who are superior in authority to the school-district authorities. Naturally this would call for an application of very liberal rules when the exercise of the discretion of the local board in the expenditure of the funds entrusted to them is to be reviewed. Of course, the expenditure of school money for any purposes foreign to the school and not connected with its maintenance would be contrary to law. On the other hand, occasions might arise in which the interest of the school would be subserved by the use of a portion of its funds for other purposes than the mere payment of its teachers or even the building or repairing of schoolhouses. The safety of funds already in hand might be involved, or the power to raise any funds in the future might be threatened. In such case it can not be said that any expense necessary to preserve unimpaired the trust delegated could not be properly made by the school trustees from the school funds. To hold otherwise would be to say that in a supposable case those who are charged with the administration of the school interest of a school district must stand idly by and lose all, for want of power to save their rights by the use of those means which must be employed by others under similar circumstances. In the absence of express legislation to the contrary, sound public policy requires that the exercise by the board of trustees of a school district of its discretion as to the expenditure of the funds raised by taxes from the citizens of the district should not be controlled or interfered with, unless there is a manifest abuse of discretion, or unless funds raised by taxation for educational purposes are expended for some purpose wholly disconnected therefrom.

3. It would seem to be implied, from the language used in § 1547, that it is the policy of the State to encourage individual action and local self-help in the school districts; and this can best be done by allowing the greatest possible freedom of action on the part of the local trustees, especially in the expenditure of funds raised by local taxation. It would seem to be in consonance with the spirit of our institutions to allow the chosen representatives of those who paid the local tax to control the disposition of the funds, with the single reservation that the money thus raised by taxation must be expended in the maintenance of a local school for whose support it was designed by the voters. It is true that

public-school money is a trust fund, and can not be applied except for educational purposes, but it would never do to give so strict. a construction to this language as to confine the expenditure to the payment of teachers, and nothing else. All language is to be given a construction which will effectuate the purpose sought to be accomplished; and so, while money raised for the maintenance of a public school may in one sense be said to be money raised for educational purposes, it is not raised for all educational purposes, but only for the benefit of pupils in strictly public or common schools. Public-school funds can not be expended for the support of a strictly private school,—that is, a school from which children legally entitled to enjoy the benefits of the public-school fund may be excluded. But while the expenditure of public-school funds is confined to public schools, we are of the opinion that in the conduct of the public schools the proper authorities (such as the trustees of a school district) may, in their discretion, make any expenditure of the funds which is absolutely necessary for the proper maintenance of the school entrusted to their charge. They might properly expend a portion of the money in repairing or improving the school building, or in fitting it with proper appliances and conveniences. They might insure the school property against loss by fire, and pay the premium from the school fund. By a parity of reasoning we have no hesitation in holding that funds derived from local taxation within a school district may properly be expended by the trustees of the district in protecting or preserving the right of local taxation for educational purposes, by the employment of an attorney, or in other legitimate expenses necessary for presenting their rights in the adjudication of the case. This ruling disposes of the alleged breach of the bond in the payment of the attorney's fee and of traveling expenses of witnesses before the legislative committee. The trustees of Wesley Chapel school district contracted to pay the attorney's fees and the expenses of the witnesses. They had the right to make the contract if the expenditure was necessary, and, according to the evidence in the record, the trial judge was authorized to conclude that the expenditure was necessary.

4. Regardless of the authorization of the county board of education, and the settlement with the county school commissioner, the treasurer was authorized, upon the order of the trustees of the

school district, to pay the tuition of those children of school age residing in Wesley Chapel school district who attended the school in Paulding county. As provided in § 1537 of the Political Code, the trustees have the right to fix the tuition for non-resident pupils. The power of fixing the rate of tuition for pupils not residing in the district naturally implies the power of the trustees of the district in which the non-resident pupils reside to agree, upon their part, to pay this tuition; because each child of school age (with some exceptions) is equally entitled to receive the benefit of the common-school fund apportioned by the State. It would be mockery to hold that the law, while devolving upon trustees of the common schools the solemn and responsible duty of providing means for the education of children of school age within their district, denies them the power to perform this duty. It is within the power of trustees of any school district in this State to provide means by which all children of school age in every school district may receive the benefit of the school fund belonging to that district. And to that end the trustees may either contract with the trustees of an adjoining school district for the payment of the tuition of non-resident pupils to themselves, or may agree to pay to the trustees of an adjoining school district, whether in the same or in an adjoining county, the tuition of resident pupils when they determine that these pupils can more advantageously or conveniently attend the school of the adjoining district than the school of the district in which they reside.

5. The point is raised by the plaintiffs in error that upon the repeal of the local-tax law in Wesley Chapel school district, it was the duty of Matthews, as treasurer of the local board of trustees, to pay over any funds in his hands to his successor as treasurer of the local board of trustees, and not to the county school commissioner. We think this position is well taken; but it does not affect the decision of the case, for the suit in the present instance does not declare a breach of the bond, except in the three payments to which we have referred; and, consequently, any payment made by Matthews to the county commissioner in settlement of his accounts is not involved. The only questions raised are as to the validity of the payment of the attorney's fees, the expenses of the witnesses, and the payment of the tuition of pupils, entitled to the benefit of the school fund in Wesley Chapel district, to a school in an adjoining

county. The title to public-school money paid into the hands of trustees of a school district while local taxation for school purposes was in force is unaffected by the fact that the local-tax law was thereafter repealed or abolished by the provisions of § 1536 of the Political Code (1910). The repeal of the local tax in Wesley Chapel school district did not abolish the office of treasurer of the board of trustees of that school district; and, by his bond, Matthews was bound to pay over any funds in his hands to his successor in office; and if he paid anything to the county commissioner, the payment would seem to be unauthorized. Certainly, if any of the funds paid by him to the county commissioner had been raised by local taxation and paid by the taxpayers of Wesley Chapel school district, they should have been expended solely for the benefit of that school; but the present suit is not brought to recover any money paid out by Matthews as treasurer, other than the three items enumerated above. As to this, the payment in each instance was authorized by the local board of trustees, and, therefore, the principal sum of $106.35, sued for, was properly accounted for, according to the terms of the bond, and, having been legally expended by him, could not be paid over to his successor.

6. The judgment of the court below, under our view of the law, was required by the evidence. The payment of each of the sums expended by the treasurer was authorized by the trustees of the school district, and, as the spending of the money was necessary in the proper administration and preservation of the school fund with which the trustees were charged, it is needless to determine how far the mere order of the majority of the board of trustees would have protected the treasurer in making the payments, if they had been less closely connected with the proper maintenance and improvement of the educational facilities of the school district.

*Judgment affirmed. Pottle, J., not presiding.*