40671.  RAY, by Next Friend v. COBB COUNTY
BOARD OF EDUCATION.

FRANKUM, Judge. 1. By the terms of § 56-2437 of the Georgia Insurance Code, as enacted by the Act approved March 8, 1960 (Ga. L. 1960, pp. 289, 673), municipal corporations, counties and other political subdivisions of this State are authorized to secure and provide insurance to cover liability

for damages on account of the negligence of any employee in the operation of any motor vehicle owned, maintained or operated by such political subdivision, and the governmental immunity of such political subdivision shall be waived to the extent of the amount of insurance so purchased. Nothing in this Act authorizes the bringing of a suit on account of the negligence of an employee of any such political subdivision against any one other than the political subdivision itself. Nothing in this Act purports to change the established law with respect to what are political subdivisions and bodies corporate subject to sue and be sued.

2. "Under the law of this State, a county board of education is not a natural person, a partnership, or a body corporate with authority to sue or be sued, in the ordinary sense." *Verner v. Board of Ed. of Haralson County*, 203 Ga. 521 (2) (47 SE2d 500). This is true except in those cases where an Act of the legislature making a county board of education a body corporate with authority to sue and be sued has been passed. *Norman v. Board of Ed. of Richmond County*, 218 Ga. 48, 49 (1) (126 SE2d 217). Under the foregoing authorities and a long line of cases cited therein, the school district of each county is one of the "other political subdivisions" referred to in § 56-2437 of the Georgia Insurance Code, which may be sued in any case coming within the terms of that law. A school board is not such a "political subdivision." *Code Ann.* § 32-1101 provides: "Pursuant to the amendment to the Constitution adopted in 1945, each county of this State, exclusive of any independent school system now in existence in a county, shall compose one school district *and shall be confined to the control and management of a county board of education.*" (Emphasis ours.) (Ga. L. 1946, pp. 206, 209). The language of this Code section requires the conclusion that a county board of education is not a political subdivision and not a body corporate liable to suit in the ordinary sense (except in cases made so by an Act of the legislature), and that the Board of Education of Cobb County through its members merely has the control and management of the Cobb County school district. See *Cotton States Mut. Ins. Co. v. Keefe*, 215 Ga. 830, 834 (1) (113 SE2d 774). See also *Board of Ed. of Baker County v. Hall*, 189 Ga. 615, 617 (2) (7 SE2d 183).

3. It follows that the judge of the superior court did not err in

sustaining the general demurrer of the defendant named in the petition, "The Cobb County Board of Education, acting by and through its duly appointed members in their representative and official capacities," where the sole basis upon which the petition sought to fix liability was the alleged negligence of a school bus driver in failing to use proper care in permitting the plaintiff to alight from the bus at an allegedly dangerous place, and in failing to take sufficient measures to protect the plaintiff from the negligence of the drivers of other motor vehicles using the road at the time and place in question.

*Judgment affirmed. Felton, C. J., concurs. Pannell, J., concurs specially.*

DECIDED SEPTEMBER 14, 1964.

*Howell C. Ravan,* for plaintiff in error.

*Edwards, Bentley, Awtrey & Parker, Fred D. Bentley, Sr., A. Sidney Parker,* contra.

PANNELL, Judge, concurring specially. In view of the decision of this court in *Taylor v. Matthews,* 10 Ga. App. 852 (75 SE 166), holding that the trustees of a school district, although not specifically authorized by statute to sue and be sued, could sue on a bond given by a treasurer of a former board of trustees, I must dissent from the reasons given by the majority in the present case for affirming the lower court in sustaining a general demurrer to the petition. None of the cases cited in the majority opinion are cases where the members of a board of education have been included as parties. See also, *Board of Ed. of Doerun v. Bacon,* 22 Ga. App. 72 (95 SE 753). In *Board of Ed. for Houston County v. Hunt,* 29 Ga. App. 665 (116 SE 900) this court, in holding that a suit did not lie against the Board of Education of Houston County for breach of contract, said: "The case of *Board of Education of Doerun v. Bacon,* 22 Ga. App. 72 (2) (95 SE 753), does not conflict with the ruling now made. That case was a suit for damages for the breach of a contract of employment brought against the Board of Education of the Town of Doerun; whereas the instant suit is one for damages for the breach of contract brought against the County Board of Education for Houston County. When the county board of

education acts upon matters lawfully within its jurisdiction, it is the county acting through 'its corporate authority' *(Smith v. Board of Education,* supra) ; and a county is not liable to suit unless there is a law which in express terms or by necessary implication so declares *(Millwood v. DeKalb County,* 106 Ga. 743, 32 SE 577), but a town or city may be." In the present case, under a statute involved, § 56-2437 of the Georgia Insurance Code, as enacted by the Act approved March 8, 1960 (Ga. L. 1960, pp. 289, 673), the county, or the county as a school district *(Cotton States Mutual Ins. Co. v. Keefe,* 215 Ga. 830 (1), 113 SE2d 774), or the board of education as a political subdivision of the State (see, *Board of Ed. of Candler County v. Southern Michigan Nat. Bank,* 184 Ga. 641, 642 (1), 192 SE 382, holding that a county board of education is a political subdivision of the State) may be sued and, therefore, the reasons for denying the suit in *Board of Ed. for Houston County v. Hunt,* 29 Ga. App. 665, supra, do not exist in the present case.

In addition to the above reasons, it appears that the Act of 1955 (Ga. L. 1955, p. 448) which contained the same provisions as are now embodied in *Code* § 56-2437, was construed in *Cotton States Mutual Ins. Co. v. Keefe,* 215 Ga. 830, supra, and held not to be in conflict with the Act of 1949 (Ga. L. 1949, p. 1155) which (a) authorized and required county school boards operating school buses "to cause policies of insurance to be issued insuring the school children riding therein to and from school against bodily injury or death at any time therefrom resulting from an accident or collision in which said buses are involved," the amount of insurance being left in the discretion of the board; and (b) authorized such school boards to cause a provision to be inserted in said policies "insuring the members of the general public against personal injury or death or damage to property resulting from the negligent operation of said buses." It was provided that nothing in the Act should be construed as imposing liability upon the school board on account of such accidents; and that the insurance company issuing a policy containing a provision insuring the general public "shall be estopped to deny its liability thereunder on account of the nonliability of said board."

In my opinion, the Act of 1949 provides a method of satisfying a judgment against school boards, and therefore even if a school

board is only a quasi corporation, it may be sued under the provisions of this statute. One of the underlying reasons for the prohibition against suing any instrumentality of the State is that an execution based upon a judgment obtained in such a suit is unenforceable. In the case of *The Justices &c. v. Haygood,* 15 Ga. 309, 313, the Supreme Court of this State said: "Upon looking to that defence, we find a question lying at the foundation of this whole proceeding, viz: whether or not these plaintiffs in error, as a *quasi* corporation, are liable to be sued in this action?

"It is very certain, that the Justices of the Inferior Court, in each county of our State, have been, by law, endowed with certain attributes or powers, which, for some purposes, constitute them, as it were, a corporation. And thus makes them, as this Court has decided in the case cited at bar, what is technically termed a *quasi* corporation. As such *quasi* corporation, we have held that they may bring suit in and concerning all matters, touching which they are endowed with these powers. But as such *quasi* corporation, can they be sued? That is now the question.

"It is insisted, that these capacities to sue and be sued, are necessarily correlative; that the one implies the other. This is not entirely accurate; for we know that the State may sue, and yet, cannot be sued, without its consent, by Statute manifested. By our laws, too, non-residents of the State may bring suit, personally, in any Court within the State; yet, they cannot be sued, except where the sovereign will has said, that they may be sued by a proceeding *in rem.*

"So the sovereign will of the State, in the creation of this Inferior Court, and in the exercise of legislation from time to time, may have conferred upon it such capacities, clothed it with such trusts, and required of it such duties, as, in the very nature of the case, enable and qualify it to contract and to bring suit against persons violating contracts with it, or committing injuries upon property intrusted to its care; and yet, in the nature of things, this Court may not be (as the State is not) subject to suit—the expression of that sovereign will having stopped short of a provision to this effect.

"We have put two cases: one in which a *quasi* corporation may sue and cannot be sued; the other, in which a natural person may

sue and cannot be sued. What is the reason that this is true in these cases?

"The common answer is, that the State cannot be sued, because it is sovereign; that is to say, all suits in its territories, are brought by authority of its own sovereign power; and the sovereignty cannot, as it were, sue itself. We know, however, that it may be sued, with its consent, in its own Courts. In an elementary point of view, it is evident, that in case of suit without its consent, there would be, not only no power to enforce process and judgment, but there would be no person against whom to enforce it, and nothing out of which to secure payment; there would be, in short, no *reus*, personally or constructively, a party to such Judicial proceedings, and against whom, or whose property the judgment might be enforced.

"So, in the case of a non-resident, where property is not attached; there is no person against whom to enforce the judgment, and nothing out of which payment may be made.

"If, as a *quasi* corporation, the Inferior Court be in a category similar in principle, the conclusion is authorized, that they cannot be sued, except by Statutory authority; that is, until some provision be made, by virtue of which, effect may be given to a judgment against them...

"It is avowed, that judgment is asked for against them, in order, as it said, that 'a liability may be fixed'; and payment may be sought, from the taxation of the county. But, if judgment be obtained against them, as the execution must always follow the judgment, the execution must issue against them. An execution against them, cannot certainly be enforced against the county, generally; and an inherent difficulty, therefore, lies in the way of such a suit.

"A private corporation may be sued, because it has not only a corporate responsibility, but a corporate fund or property, against which the judgment may be enforced. A very different rule prevails, with regard to the inhabitants of any districts—as counties or towns, incorporated by Statute, which come under the head of quasi corporations; for against them, no private action will lie, unless given by Statute. (Ang. & A. on Corp. 499.)."

"There can be no doubt that, at Common Law, such an action could not be maintained against such a body.

"An action could not have been maintained against the Hundred, on account of robberies, &c., committed therein, but for the Statute of Winton, (13 Edw. 1,) which 'converted the Hundred into a corporation for this purpose'. (2 Wils. 92, 93.) So, in the case of Russell et al. vs. The Men of Devon, (2 D. & E. 661,) it was decided, that such an action could not be sustained, at Common Law, against a county, on account of injuries resulting from a bridge being out of repair—Lord Kenyon saying, that 'there is no precedent of such an action having been before attempted'; and Mr. Jus. Ashurst remarking, that 'no such action has ever been brought, though the occasion must have frequently happened'.

"We have not been content, however, with simply ascertaining, that Courts have said this action could not be sustained at Common Law. We have endeavored to discover the radical reasons for the rule. These reasons, we find, have their root in the very foundations of administrative justice.

"Lex non frustra facit, is a first principle or maxim of our jurisprudence. The law will not, itself, attempt to do an act which would be fruitless. This is said to be 'a maxim of our legal authors, as well as a dictate of common sense'. (Broom's Leg. Max. 185. Kent, Ch. Jus. 3 John. R. 598).

"A proceeding, such as that which has been instituted against these plaintiffs in error, is precisely of this character. They are not liable, personally, nor by their property, as individuals, as we have seen—they have no corporate property, with which they may be constrained to satisfy the judgment, or out of which payment may be enforced; and the Court, if it granted the judgment, would be powerless to enforce it in any way. If a judgment were obtained against the plaintiffs in error, they would have no power of themselves, even to tax the county for its payment. By law, they can lay a tax, only upon recommendation of the Grand Jury; and then, not more than 50 per cent upon the county tax.

"In trying such a case, therefore, against these plaintiffs in error, the Court, even if it had a *reus* before it, in judicial contemplation, would not, itself, be acting in the true character of the *judex*. He who sits as Judge, in a Court of Justice, should

have the power to enforce his judgments; and when a proceeding is brought before him, in which he has not this power, it falls without the scope and limit of his jurisdiction, in that form of proceeding, at least. Hence, the propriety of the maxim I have quoted. Hence, too, that other maxim, lex neminem cogit ad vana seu inutilia. (5 Rep. 21, Co. Lit. 197, c.) On this subject, Ch. Jus. Kent, giving a sort of free translation to this maxim, says, that 'the law will not attempt to do an act which would be vain, or to enforce one which would be frivolous'; and further, 'that a Court will not undertake to exercise power, but when they exercise it to some purpose'. Trustees of Huntington vs. Nicholl, (3 John. R. 598.) To the same effect, Rex vs. Bish. of London, 13 (Cast. 420, note a.) King vs. Jus. Pembrokeshire, (2 B. & Ad. 391.)

"It was upon this principle, that the Court decided, in the case of Russell vs. The Men of Devon, above cited, that 'if the county is to be considered as a corporation, there is no corporate fund out of which satisfaction is to be made' and, therefore, they thought 'the experiment ought not to be encouraged.' "

In my opinion, the legislature having provided a method for payment of judgment against it, the action was properly brought against the board of education and the members thereof in their official capacity. I concur in the judgment reached for the following reasons:

Construing the petition in the present case most strongly against the pleader, and in the light of its omissions as well as its averments, as must be done on demurrer, *Toney v. Ledford,* 184 Ga. 856 (193 SE 761), *Mackler v. Lahman,* 196 Ga. 535 (27 SE2d 35), *Ford Motor Co. v. Williams,* 219 Ga. 505, 508 (134 SE2d 32), it is my opinion that under the facts alleged therein, the 15-year old plaintiff, suffering under no disabilities, was guilty of such lack of ordinary care for his own safety as precludes a recovery. Whether or not, under the facts alleged, the plaintiff comes within the purview of Ga. L. 1960, pp. 289, 673 (*Code* § 56-2437), it appears that the driver of the school bus had "on many occasions allowed this plaintiff to disembark from said bus at this point" at a stop sign before entering Georgia Highway No. 5, being a dangerous intersection of five separate

and distinct traffic arteries carrying considerable vehicular traffic at all times of day and night, going in at least six different directions within a space of 50 feet in circumference totally lacking in sidewalks or area for pedestrians to walk in, "for the purpose of crossing said Georgia Highway No. 5," and that the driver "usually stopped the bus, kept a sharp lookout for on-coming vehicles proceeding through the intersection; would then open the front door for the plaintiff to disembark and *advise the plaintiff when to cross* said Georgia Highway No. 5." (Emphasis supplied). It appears, also, that on the occasion in question the bus driver stopped the bus at the same place and at a stop sign entering Georgia Highway No. 5; that the plaintiff alighted from the bus and, without waiting for the driver to advise him to do so, proceeded across Highway No. 5 at a dangerous intersection carrying considerable traffic and was struck by a car driven by a third party in the lane of said Georgia Highway No. 5 nearest the stopped school bus. Under the decision of this court in *Jordan v. Wiggins,* 66 Ga. App. 534 (18 SE2d 512), the plaintiff was guilty of such lack of ordinary care for his own safety as to preclude a recovery. *Gazaway v. Nicholson,* 61 Ga. App. 3 (5 SE2d 391) involved a 7-year old child.