70415. DeKALB COUNTY SCHOOL DISTRICT v. BOWDEN.

(339 SE2d 356)

BENHAM, Judge.

This is an appeal from the Superior Court of DeKalb County, in which we once again are faced with interpreting one of the many and varied facets of a doctrine that is derived from antiquity but has present day application: governmental immunity.

Appellee was seriously injured in a collision between a car in which she was a passenger and a truck owned by appellant DeKalb County School District and driven by an employee of appellant. In its answer to appellee's personal injury suit, appellant raised the defense of governmental immunity. Both sides moved for summary judgment, appellee seeking a ruling that appellant's employee was negligent, that appellant's employee was acting within the scope of his employment when the collision occurred, and that appellant had waived the defense of governmental immunity by purchasing liability insurance pursuant to OCGA § 33-24-51; appellant basing its motion on the position that governmental immunity barred the suit. We granted appellant's application for interlocutory appeal to review the denial of appellant's motion and the grant of appellee's motion on the issue of governmental immunity.

OCGA § 33-24-51 reads in pertinent part as follows:

"(a) A municipal corporation, a county, or any other political

subdivision of this state is authorized in its discretion to secure and provide insurance to cover liability for damages on account of bodily injury or death resulting from bodily injury to any person or for damage to property of any person, or for both arising by reason of ownership, maintenance, operation, or use of any motor vehicle by the municipal corporation, county, or any other political subdivision of this state under its management, control, or supervision, whether in a governmental undertaking or not, and to pay premiums for the insurance coverage.

"(b) Whenever a municipal corporation, a county or any other political subdivision of this state shall purchase the insurance authorized by subsection (a) of this Code section to provide liability coverage for the negligence of any duly authorized officer, agent, servant, attorney, or employee in the performance of his official duties, its governmental immunity shall be waived to the extent of the amount of insurance so purchased. Neither the municipal corporation, county, or political subdivision of this state nor the insuring company shall plead governmental immunity as a defense; and the municipal corporation, county, or political subdivision of this state or the insuring company may make only those defenses which could be made if the insured were a private person.

"(c) The municipal corporation, county, or any other political subdivision of this state shall be liable for negligence as provided in this Code section only for damages suffered while the insurance is in force but in no case in an amount exceeding the limits or the coverage of the insurance policy.

"(d) . . . [I]f the verdict rendered by the jury exceeds the limits of the applicable insurance, the court shall reduce the amount of said judgment or award to a sum equal to the applicable limits stated in the insurance policy."

"[T]he school district of each county is one of the 'other political subdivisions' referred to in [the statute], which may be sued in any case coming within the terms of that law." *Ray v. Cobb County Bd. of Education*, 110 Ga. App. 258, 259 (138 SE2d 392) (1964).

It is unquestioned in the record that appellant has purchased liability insurance for a premium of $94,000. However, the policy provides for an "Insured's Retained Limit" of $100,000 per occurrence and $170,000 per year. Under that provision, it is the obligation of the insured "to pay the ultimate net loss sustained under the policy up to the 'Insured's Retained Limit — Per Occurrence' [$100,000] provided, however, the Named Insured's total annual obligation for such loss shall be limited to the amount stated in item 1a of the Declarations as Insured's Retained Limit-Annual Aggregate [$170,000]. The Company will pay all subsequent damages covered by the policy, subject to [insurer's] Limit of Liability [$400,000] . . . ." It is appellant's position

that since its governmental immunity is waived only to the extent of its insurance coverage and there is no coverage for the first $100,000 of liability, there is no waiver of governmental immunity as to that first $100,000 per occurrence. We agree with this position.

The issue presented is very intriguing in light of the statutory language and the interpretation given to it. The statute gives the school board the option of obtaining liability insurance and waiving its governmental immunity defense, or foregoing liability insurance and retaining its governmental immunity defense. However, the legal waters were muddied considerably with the case of *Davis v. City of Macon*, 122 Ga. App. 665 (178 SE2d 557) (1970), which dealt with the purchase of liability insurance by a municipality. The policy contained a "self-insured retention" clause in the amount of $10,000. The *Davis* court, in analyzing the case, concluded that municipalities within a certain population range were allowed to self-insure. Then it proceeded to search the record, including supplemental briefs and census updates, to find if the City of Macon fell within the population range. The *Davis* court found that it did. Therefore, the City of Macon was entitled to self-insure, and governmental immunity was effectively waived.

The language in *Davis*, at 667, which we deem to muddy the water significantly, is as follows: "While [OCGA § 33-24-51] provides for waiver of governmental immunity by the purchase of insurance [cits.], it is clear from the wording of the statute that waiver applies only to the extent of the applicable insurance coverage purchased by the municipality; and, unless there is other applicable legislation authorizing it to become a self-insurer, it is without authority to so act and waive its immunity from liability for damages arising out of the exercise of governmental functions. *Boone v. City of Columbus*, 87 Ga. App. 701 (75 SE2d 338). And compare *City of Calhoun v. Holland*, 222 Ga. 817 (152 SE2d 752)." Additionally, *Davis* at 670, states: "Thus we agree with plaintiff that under the facts here the city has waived its governmental immunity under [OCGA § 33-24-51] by the purchase of this policy of insurance, provided the city meets the requirements of Ga. L. 1960, p. 2709 [population range]."

Under *Boone* and *City of Calhoun*, decided in 1953 and 1966 respectively, this court found that application of the equitable waiver principle amounted to an unauthorized encroachment on state powers and disallowed waiver of governmental immunity. However, these cases are significant only from a historical and developmental standpoint, since through statute the state here has deliberately and unequivocally authorized the relinquishment of the defense of governmental immunity without any limiting provision as to self-retention clauses.

The language which apparently threw the *Davis* court off track

can be found in *Boone v. City of Columbus* at 703: "The fundamental reason (in addition to the constitutional prohibition [Ga. Const. 1983, Art. III, Sec. VI, Par. VI]) prohibiting either [waiver of immunity or ratification] is that there is no provision of law for raising the funds with which to pay a claim not authorized or recognized by law." The *Davis* decision failed to realize that *Boone* was decided at a time when there was absolute sovereign immunity. This misplaced reliance on *Boone* caused the court to surmise that if a municipality could not raise funds, it could not become a self-insurer unless specifically authorized. Likewise, in *City of Calhoun*, the municipality had attempted to waive the notice of claim within six months as was provided under statute, OCGA § 36-33-5. It is obvious that neither of these situations applies here.

While *Davis* reached the correct result, from the standpoint of reason its conclusion that no self-insurance means no waiver of immunity is infirm in two respects. The first is a fallacy of deduction known as *non sequitur*: the conclusion is not a necessary consequence of the premise. The second is the fallacy of false division: the drawing of sharp distinctions in a complex matter when the situation shows that a middle ground is preferred, rather than the extremes. To follow *Davis* in this instance would not amount to a new birth for governmental tort liability as envisioned by the legislature, but would result in a stillborn birth. So we must overrule *Davis v. City of Macon* and strip it of the false luster of precedential force by applying tried and true principles of statutory construction. However, in doing so, we cannot look at the statute in narrow contours and be oblivious to the realities of its application.

Although the doctrine of governmental immunity is at odds with contemporary notions of tort liability, the Georgia Supreme Court has recently upheld the doctrine in *Robinson v. City of Decatur*, 253 Ga. 779 (325 SE2d 752) (1985), and we in no way seek to destroy it here. We merely seek to carry out the legislative intent which can best be done by systematically applying tried and true principles of statutory construction.

" '[T]he cardinal rule to guide the construction of laws is, first, to ascertain the legislative intent and purpose in enacting the law, and then to give it that construction which will effectuate the legislative intent and purpose.' [Cits.]" *Hollowell v. Jove*, 247 Ga. 678, 681 (279 SE2d 430) (1981). We turn next to OCGA § 1-3-1 (a), which tells us that "[i]n all interpretations of statutes, the courts shall look diligently for the intention of the General Assembly, keeping in view at all times the old law, the evil, and the remedy."

Prior to the adoption of the statute under investigation here, the government, with few exceptions, enjoyed absolute immunity from tort liability, and it is obvious that OCGA § 33-24-51 was passed to

give relief to those injured by the tortious conduct of governmental employees. The remedy here was through insurance coverage.

Having a clear understanding of "the old law, the evil, and the remedy," we turn for guidance to *Brown v. State Merit System*, 245 Ga. 239, 242 (264 SE2d 186) (1980): "The construction which will give effect to a statute or rule is preferred to a construction which will destroy it." Our interpretation is strengthened by the language of *City of Jesup v. Bennett*, 226 Ga. 606, 609 (176 SE2d 81) (1970): "[E]ven though the literal language of an Act may be plain and unequivocal it is the duty of the courts, in determining the legislative intent under the cardinal rule first alluded to, to refrain from ascribing to the legislature a wholly unreasonable intention or an intention to do a futile and useless thing." Our resolve is complete when we view the preceding statutory construction rules in conjunction with *General Elec. Credit Corp. v. Brooks*, 242 Ga. 109, 112 (249 SE2d 596) (1978): "It is the duty of the court to consider the results and consequences of any proposed construction and not so construe a statute as will result in unreasonable or absurd consequences not contemplated by the legislature. [Cits.]" Therefore, we view OCGA § 33-24-51 as being much like a valve. Purchase of liability insurance by the governmental unit provides the injured party an access valve to the court system, but the doctrine of governmental immunity acts as a safety valve against retention amounts and amounts which exceed the coverage. This qualified waiver interpretation comports with the statutory language, the legislative intent and reason, and it works in tandem with the statute and not in tension therewith. Succinctly put, "[w]hen a public body has purchased liability insurance, there is no necessity for the protection which sovereign immunity provides *to the public*. Conversely, the insurer, as a private, for-profit entity, should not be accorded the protection of sovereign immunity, which exists for the benefit of the *public*. Thus, as in this case, when the public utility of sovereign immunity has evaporated, that doctrine should not serve to shield what is purely a private interest." *Toombs County v. O'Neal*, 254 Ga. 390 (330 SE2d 95) (1985) (Justice Weltner's special concurrence). See also *Thigpen v. McDuffie County Bd. of Education*, 255 Ga. 59 (335 SE2d 112) (1985).

For the reasons stated herein, we affirm the trial court as to its denial of summary judgment to appellant, and we also affirm the judgment of the trial court granting summary judgment to appellee insofar as the trial court ruled that appellant's governmental immunity was waived only to the extent of insurance coverage. We direct the trial court to strike any reference to the defense of governmental immunity from appellant's answer and, should appellee prevail at trial, to enter judgment for appellee only for the amount of the coverage of the insurance policy, i.e., for the amount greater than the self-

retained limit and less than the policy's upper limit. OCGA § 33-24-51 (d).

*Judgment affirmed with direction. Banke, C. J., McMurray, P. J., Birdsong, P. J., Sognier and Pope, JJ., concur. Deen, P. J., Carley and Beasley, JJ., concur specially.*

BEASLEY, Judge, concurring specially.

I do not believe that under the facts and law controlling at that time, *Davis v. City of Macon*, 122 Ga. App. 665 (178 SE2d 557) (1970) is incorrect. The insurance policy purchased by the city contained a special condition precedent under which the insurer would not be liable at all: " '10. Attachment of Liability. Liability under this policy shall not attach [to insurer] unless and until the insured shall have admitted liability for the self-insured retention limits, or unless and until the insured has by final judgment been adjudged to pay a sum which exceeds such self-insured retention limits.' " Id. at 667. Thus, unless the city was self-insured for the first $10,000 in damages, the insurance did not cover the next $90,000 at all. In fact, the policy was called an " 'excess policy over self-insured retention.' " Id. at 666.

So it became important in *Davis* to determine whether the city *could* be self-insured, i.e., whether the law allowed it, and secondly, whether it *did* become self-insured for the first $10,000, i.e., whether it followed the statutory requirements for a municipality to become self-insured. The statutory law of Georgia did allow certain municipalities to become self-insured if they so chose and thereby to waive their governmental immunity to that extent. Ga. Laws 1960, p. 2709 is the statute pointed to by the court in *Davis*. But that statute did not give this authority to every municipality in Georgia; only those coming within a certain population bracket were given this specific and limited type of permission to waive governmental immunity. Whether Macon was one of the chosen few had to be decided on the basis of evidence. Since the 1961 census which would purportedly show that it did qualify was not in evidence in the trial court, the Court of Appeals properly remanded the case for proceedings at which that evidence and "any further necessary proof of compliance with the Act" could be introduced. As to the latter, the Court was referring to the procedure by which a city which chooses to become self-insured, does in fact do so.

Then, of course, if the city was *allowed* to become self-insured in that it came within the population bracket, and *did* become self-insured by following the procedural requirements, then two consequences resulted: one, the policy liability attached because the condition had been met, and the policy coverage for $10,001 to $100,000

was available due to the contract and the law allowing such contracts (the Ins. Code § 56-2437, now OCGA § 33-24-51); two, the direct liability of the city attached up to $10,000 because it had self-insured itself for the first $10,000 by electing to become self-insured and by fulfilling the requirements of the law.

That is what the Court meant, I believe, when it concluded: "Thus we agree with plaintiff [who was suing for $30,000] that under the facts here the city has waived its governmental immunity under Insurance Code § 56-2437 by the purchase of this policy of insurance, provided the city meets the requirements of Ga. L. 1960, p. 2709." Id. at 670. Despite the reference by the majority in this current case to the 1960 Act as a "population range" act, it is more, for it also is the basis of authority for otherwise immune municipalities to follow certain procedures and become self-insured.

I see no reason for overruling *Davis v. City of Macon,* supra.

As to the instant case in which plaintiff seeks $200,000, the question is whether the school district could and did become self-insured for the first $100,000 (and aggregate of $170,000 for the year). In this case policy coverage and self-insurance coverage are not dependent questions, as they were in *Davis,* because the policy in this case does not contain a condition of self-insurance which had to be fulfilled and absent which there would be no coverage. The school district chose to purchase insurance for damages over $100,000 (and under the yearly aggregate) and thus waive its immunity under OCGA § 33-24-51 to that extent. It did not, simply by the act of purchasing that coverage thereby, ipso facto, choose also to become a self-insurer for the first $100,000. Such an act of discretion would have to be authorized by a statute other than OCGA § 33-24-51, which does not embrace waiver via self-insurance, and would have to have fulfilled whatever statutory procedures were provided by the legislature for it to become self-insured. The reason is that "[a] county is not liable to suit for any cause of action unless made so by statute." OCGA § 36-1-4. See *Miree v. United States,* 242 Ga. 126, 133 (249 SE2d 573) (1978); *Johnson v. Chatham County,* 167 Ga. App. 283, 284 (306 SE2d 310) (1983). Without a statute authorizing waiver by way of self-insurance, there could be none even if the school district contracted with the insurer to be self-insured as a condition of insurer's liability, as it did in *Davis.* That, of course, is not the case here. There is no "Attachment of Liability" provision similar to that found in the *Davis* case nor any other provision which would make self-insurance a condition of policy coverage. The policy merely provided that the insurer was not covering the first $100,000 nor anything over $400,000. By this limitation it did not, nor could it, impose self-insurer status and liability arising out of self-insurer status, on the governmental entity.

The question in the current case then is, with the school board's

retention of whatever liability it might have for the first $100,000, was it immune to the claim up to that amount or had it chosen to become self-insured for that amount? The authority to become self-insured would have to rest in statute, just as the authority to purchase insurance must rest on OCGA § 33-24-51. See *Koehler v. Massell*, 229 Ga. 359, 362 (4) (191 SE2d 830) (1972). In the *Davis* case it rested on Ga. L. 1960, p. 2709 (if Macon met the population criteria and followed the procedure), but that does not apply here as the school district is not a municipality. There is no statute of similar import by which the legislature of Georgia granted to such subdivisions of the state the authority to waive the governmental immunity which would otherwise prevail. That being the case, even if the school board desired to self-insure, and there is no evidence that it did except perhaps the inference drawable from its purchase of an "Excess Automobile Liability Policy," it could not do so.

I am authorized to state that Presiding Judge Deen and Judge Carley join in this special concurrence.

DECIDED DECEMBER 4, 1985 —
REHEARING DENIED DECEMBER 19, 1985 —

*Arthur L. Myers, Jr.*, for appellant.
*Lynwood A. Maddox, Jr.*, for appellee.